UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE STEERING COMMITTEE ON BEHALF OF THE PARTIES TO THE JPCIA DATED JULY 7, 2026,<br><br>Plaintiffs,<br><br>-against-<br><br>PENINSULA CAPITAL TRUST, PENINSULA ACCUMULATOR TRUST, PENINSULA ACCELERATOR TRUST, MANHATTAN PRIVATE CREDIT MARKETS LLC, MANHATTAN ST NOTES LLC, MANHATTAN 5 OCEANS PARTNERS LLC, SAVILLE FIDUCIARY CORPORATION f/k/a GLOBAL PATENT & ASSERTION CAPITAL CORPORATION, DIGITANWORKS AG, DOVERA CAPITAL PTY LTD, RODGERS AND ASSOCIATES LLC, PERSHING INSURANCE BOND, LLC a/k/a PERSHING SPECIALTY RISK LLC, CROWN GLOBAL DMCC, MANHATTAN PRIVATE CREDIT (SEYCHELLES), BRAYDEN CRAIG a/k/a NOEL LUXETON a/k/a SCOTT CAMPBELL FISHER a/k/a NOEL AVASONIS a/k/a SEAN CARTIER a/k/a BENNET BRAYDEN RICHARDS a/k/a TRENT SCOTT WALLACE STRONG a/k/a SCOTT WILLIAMS, CAROL ANN HUNTER, TIM BENTLEY, ANDREW MACKENZIE MELVILLE a/k/a ANDREW MELVILLE, JENNIFER LYNN RODGERS a/k/a JENNIFER ROGERS, DANIEL BENZ, LUKE ADEBIYI, and NIGEL CATT,<br><br>Defendants. | Case No.: 1:26-cv-7519 (MKV) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
***EX PARTE*** **EMERGENCY MOTION TO MODIFY TRO ORDER AND**
**FOR APPOINTMENT OF ESCROW AGENT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .......... ii
PRELIMINARY STATEMENT .......... 1
RELEVANT BACKGROUND .......... 3
ARGUMENT .......... 6
CONCLUSION .......... 11

## TABLE OF AUTHORITIES

Page(s)

Cases

*Gummy Bear Internat'l, Inc. v. Soonova, LLC*,
2026 WL 1091032 ....................9
*Hotel 71 Mezz Lender LLC v. Falor*,
14 N.Y.3d 303 (2010) ....................8
*Liu v. SEC*,
519 U.S. 71 (2020) ....................10
*New York v. Microsoft Corp.*,
531 F. Supp. 2d 141 (D.D.C. 2008) ....................6
*Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*,
970 F.2d 552 (9th Cir. 1992) ....................6
*S.E.C. v. Cavanagh*,
445 F.3d 105 (2d Cir. 2006) ....................10
*S.E.C. v. Rogas*,
2024 WL 4930363 (S.D.N.Y. Dec. 2, 2024) ....................9
*SEC v. Manor Nursing Centers, Inc.*,
458 F.2d 1082 (2d Cir. 1972) ....................10
*Sierra Club v. U.S. Army Corps of Eng'rs*,
732 F.2d 253 (2d Cir. 1984) ....................6
*The Steering Committee on Behalf of the Parties to the JPCIA Dated July 7, 2026 v. Peninsula Capital Trust*,
2026 WL 2583129 (S.D.N.Y. Sept. 1, 2026) ....................1
*Univ. of Tex. v. Camenisch*,
451 U.S. 390 (1981) ....................6

Plaintiff THE STEERING COMMITTEE ON BEHALF OF THE PARTIES TO THE JPCIA ("Plaintiff" or "the Steering Committee"), by and through its attorneys, Rimôn, P.C., respectfully submits this memorandum of law in support of its motion to modify the existing Temporary Restraining Order and Pre-Judgment Order of Attachment entered on September 3, 2026 and modified and extended by Court Order dated September 17, 2026, to place funds currently totaling [redacted] (the "Investment Funds") in a court-approved neutral depository so that the Investment Funds are available for recovery by the Plaintiffs to satisfy the over $100 million in losses that they have incurred as a result of Defendants' allegedly fraudulent scheme.

**PRELIMINARY STATEMENT**

By this motion, Plaintiff seeks the limited relief of modifying the TRO and pre-judgment order of attachment (ECF No. 5)[1] for the purpose of redirecting a portion of the MPCM Investor Funds that have been located by Plaintiff away from the Manhattan Defendants and into an escrow account during the pendency of this action to satisfy any judgment it obtains from this Court. The Investment Funds at issue are comprised of funds belonging to the MPCM Investors that were sent to Defendants Manhattan ST Notes LLC ("MSTN") and Manhattan Private Credit Markets LLC ("MPCM") (collectively, the "Manhattan Entities") as the purchase price of various MSTN investment products. The proceeds of these investment products were explicitly to be used to invest in a myriad of investment categories, including litigation finance. There were no such investments despite Defendants' explicit representations to the contrary. Plaintiff's

[1] *The Steering Committee on Behalf of the Parties to the JPCIA Dated July 7, 2026 v. Peninsula Capital Trust,* 2026 WL 2583129 (S.D.N.Y. Sept. 1, 2026).

investigation has shown that the MPCM Investor funds flowed from MSTN to MPCM and that they were then used [redacted] *See* Affirmation of Neal Levin, sworn to on September 21, 2026 (the "Levin Affirmation"), ¶ 5.

Then, in turn, the funds [redacted]. *Id.*. [redacted], which holds the Investor Funds at issue, is not a Defendant in this action. *Id.*. This transfer appears to [redacted] *Id.*, ¶ 6. Despite the MPCM Investors having purchased MSTN Notes since October 2024 and having received coupon payments on such notes beginning in November 2024, Plaintiffs have been unable to find an actual investment as represented by these Defendants. [redacted] Plaintiff's counsel has obtained an agreement in principle [redacted] to turn over the Investment Funds, less the amount used for bona fide expenses incurred in the formation and administration [redacted], to a third-party, independent custodian to hold these funds in a segregated account to be preserved during the pendency of this action so they

[2] [redacted]

may be available for divestiture and held securely during the pendency of his litigation. *Id.*, ¶ 11.

Absent the Order sought by this motion, the Investor Funds would have to be returned to the control of the Defendant fraudsters (as alleged), the Manhattan Entities, which would assuredly move these funds out of the reach of this Court. Notably, neither the Manhattan Entities have appeared in this action despite having notice of it. The Manhattan Entities were served with the Summons, Complaint, TRO, and underlying motion papers. *See* Affidavit of Service on MSTN at ECF No. 24; Affidavit of Service on MPCM at ECF No. 25.

Accordingly, for the reasons set forth below, it is respectfully submitted that the Court grant Plaintiff's motion to modify the TRO to implement the existing Article 62 attachment to include the Investor Funds currently held by [redacted]. Specifically, that incoming funds from [redacted] be paid directly to a neutral, court-approved Escrow Agent to be remitted directly to a segregated, interest-bearing account, in *custodia legis*, and that no person may withdraw, transfer, encumber, pledge, distribute, offset, or otherwise dispose of those funds without further order of the Court.

**RELEVANT BACKGROUND**

On September 2, 2026, the Committee initiated this litigation and moved for and was granted an Order Granting Motion for Temporary Restraining Order, a Pre-Judgment Order of Attachment, and Expedited Discovery on September 3, 2026. *See* ECF No. 5. As stated in the TRO Order, the Court found that "Plaintiffs are likely to succeed on the merits of their claim. Plaintiffs have sufficiently pled facts evidencing a scheme by Defendants to obtain millions of dollars of funds from hundreds of victims under fraudulent pretenses." Order at ECF No. 5, p. 5. In issuing the TRO Order, the Court found that "[t]he Verified Complaint and both sworn

statements allege a complex array of financial institutions, corporate entities, and foreign vehicles. They paint a picture of sophisticated Defendants that are capable of dispersing the purportedly fraudulently obtained funds in a manner that would prevent Plaintiffs' recovery absent immediate action." TRO Order, *citing* Affirmation of Neal Levin, sworn to on August 27, 2026 (the "August 27 Levin Affirmation") ¶ 14; Affidavit of Nicholas C. White in Support of Order to Show Cause, sworn to on August 27, 2026 (the "White Affidavit"). The Court further found that "Plaintiffs are likely to suffer irreparable harm absent the issuance of temporary injunctive relief." TRO Order, p. 5. Indeed, the Court stated that if it did not grant injunctive relief "it could result in the complete loss of the over $100 million of allegedly fraudulently seized funds thus this short-term freeze is in the best interest of the public." *Id.*

Accordingly, the Court ordered a temporary restraining order and a preliminary order of attachment over the 21 bank accounts identified in the Levin Affirmation. *Id.* at p. 7. The Committee began serving the TRO Order on those accounts immediately. Through the Committee's ongoing investigation and the expedited discovery authorized by the Court, the Committee was able to unravel one thread of Defendants' fraud and identify funds that could be used to reimburse them for their losses. The following details as to how this facet of Defendants' scheme was operated have come to light.

Defendants specifically represented [redacted] litigation asset vehicles. *See* Levin Aff., ¶ 8. Plaintiff has discovered that [redacted]

[redacted] On information and belief, the structure was that the MPCM Investor funds flowed from MSTN to MPCM [redacted] *Id.*, ¶7. [redacted] *Id.*, ¶6.

Pursuant to representations by [redacted] received an aggregate amount of [redacted]. *Id.*, ¶7. [redacted]. *Id.*, ¶6. [redacted] *Id.*, ¶11.

# ARGUMENT

## I. The Court Has Broad Authority to Modify the TRO to Reach the Investor Funds Held by [redacted]

Federal courts possess inherent authority to modify their own interlocutory orders at any time prior to final judgment. *See* Fed. R. Civ. P. 65; *see also Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). In the Second Circuit, a court may modify a temporary restraining order or preliminary injunction where the movant demonstrates that the modification is warranted by the circumstances. *See Sierra Club v. U.S. Army Corps of Eng'rs*, 732 F.2d 253, 256 (2d Cir. 1984). The standard for modification depends on the nature and scope of the relief sought.

Where, as here, the modification seeks to extend an existing asset freeze to additional assets that are traceable proceeds of the same fraudulent scheme already addressed by the Court's order, the movant need not re-establish the four-factor test for injunctive relief *de novo*. Rather, the movant must demonstrate that: (1) the same grounds that justified the original order apply with equal force to the newly identified assets; (2) there is a sufficient nexus between the new assets and the conduct the Court already found likely fraudulent; and (3) the modification is reasonably necessary to preserve the status quo and effectuate the purposes of the original order. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (courts retain jurisdiction to modify injunctive relief to ensure it remains effective); *see also New York v. Microsoft Corp.*, 531 F. Supp. 2d 141, 149 (D.D.C. 2008).

All three conditions are satisfied here. First, the Court has already found that Plaintiffs are likely to succeed on the merits of their fraud claims and that Defendants are poised to dissipate assets. *See* ECF No. 5, pp. 5-6. These findings apply with equal force to the Investment Funds held by the [redacted], which are traceable proceeds of the same fraudulent scheme, they originated as MPCM Investor funds that flowed from MSTN to MPCM, through the [redacted]

[redacted]. *See* Levin Aff., ¶¶ 5 & 9. Second, the nexus between the [redacted] assets and the underlying fraud is clear: only approximately 5% of total capital raised through the MSTN Notes was transmitted along this investment chain, and the transfers did not begin until April 2026, well after investors had been purchasing MSTN Notes and receiving coupon payments since late 2024, demonstrating that the transfers were a belated attempt to create a veneer of legitimacy. *See* id., ¶6. Third, the modification is necessary to preserve the status quo because, absent this Order, the Investment Funds would be returned to the Manhattan Entities, which have not appeared in this action despite service and which would assuredly place these funds beyond the reach of this Court. *See* Affidavit of Service on MSTN at ECF No. 24; Affidavit of Service on MPCM at ECF No. 25.

Even if the Court were to apply the full four-factor test for injunctive relief to this modification, each factor independently supports the relief sought. As noted above, the Court has already found a likelihood of success on the merits. *See* ECF No. 5, p. 5. The risk of irreparable harm is, if anything, more acute with respect to these funds, which are held in [redacted] vehicle beyond the direct reach of this Court's existing freeze order. The balance of equities overwhelmingly favors Plaintiffs: the funds at issue were never legitimately deployed for the investment purposes represented to the MPCM Investors, [redacted] *See* Levin Aff., ¶8. Finally, the public interest strongly supports preserving these funds for hundreds of defrauded investors, as this Court recognized in its original TRO Order. *See* ECF No. 5, p. 5.

## II. Prejudgment Attachment Under CPLR § 6201(3) Extends to the Investment Funds Held by Non-Party [redacted]

Plaintiff's motion to modify the TRO is further supported by the independent ground that prejudgment attachment under Article 62 of the CPLR reaches the Investment Funds held by the [redacted]. CPLR § 6201(3) authorizes attachment where "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts." The Court has already found this standard satisfied, holding that "Defendants appear poised to 'defraud their creditors or frustrate the enforcement of a judgment that might be rendered in [Plaintiff's] favor,' by assigning, deposing, or removing property from the state." ECF No. 5, p. 5 (citing CPLR § 6201).

That the Investment Funds are currently held by [redacted], a non-party to this action, does not preclude their attachment. Under New York law, CPLR § 6201(3) permits attachment of a defendant's property or assets regardless of who holds them, provided that the property is traceable to the defendant or was transferred with the intent to frustrate creditors. *See Hotel 71 Mezz Lender LLC v. Falor*, 14 N.Y.3d 303, 316 (2010) (attachment reaches assets a defendant has transferred to third parties where the transfer was made with fraudulent intent).

Here, the Investment Funds held by the [redacted] are directly traceable to the MPCM Investor funds that Defendants fraudulently obtained. [redacted]. *See* Levin Aff., ¶5. This chain of transfers does not sever the connection between the funds and Defendants' fraud; to the contrary, it exemplifies precisely the type of property disposition that § 6201(3) is designed to reach. The fact that only approximately 5% of total MSTN Note proceeds were

transmitted along this chain, and that the transfers did not commence until April 2026 despite the notes having been sold since October 2024, further supports the inference that these transfers were made with the intent to create a false appearance of legitimate investment activity rather than for *bona fide* commercial purposes. *See* id., ¶6.

Moreover, the Court's authority to enter the requested order is reinforced by the voluntary cooperation of the [redacted], who has agreed in principle to return the capital contributions less bona fide fund expenses. *See* id., ¶¶11&12. Where a non-party consents to the entry of an order affecting assets in its possession, courts regularly enter such orders as a practical exercise of their equitable authority. *See, e.g., S.E.C. v. Rogas*, 2024 WL 4930363, *6 (S.D.N.Y. Dec. 2, 2024) (ordering non-party law firm to deposit funds into escrow). The Court's order would thus serve to memorialize and enforce an arrangement to which the custodian of the funds has already consented, ensuring the Investment Funds are preserved *in custodia legis* for the benefit of the defrauded MPCM Investors.

## III. The Court Should Exercise Its Broad Equitable Authority to Order the Investment Funds Placed in Custodial Escrow

The Court's Order at ECF No. 5 applied specifically to "monies in the Accounts identified in Schedule A to the Levin Affirmation." *Id.* at p. 7. Having established that the modification standard and the Article 62 attachment requirements are independently satisfied, Plaintiff now seeks a limited extension of the Order to the funds presently held by the [redacted] and the equitable remedy of transferring them to a neutral, segregated account for the benefit of the defrauded investors. *See Gummy Bear Internat'l, Inc. v. Soonova, LLC*, 2026 WL 1091032, *3, Index 25-CV-4832 (S.D.N.Y. Ap. 22, 2026) (granting motion for prejudgment attachment, modifying preliminary injunction, and ordering that the preliminary injunction otherwise remained in effect); *see also S.E.C. v. Rogas,* 2024 WL 4930363, *6, Index No. 20-

cv-7628 (S.D.N.Y. Dec. 2, 2024) (ordering law firm to deposit funds received from Defendant into interest-bearing escrow account for the benefit of innocent investors) (quoting *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1105 (2d Cir. 1972) ("One of the chief reasons for requiring defendants to refund illegally obtained proceeds . . . is to compensate defrauded investors."))

Courts possess broad equitable authority to order the disgorgement of funds that are the proceeds of fraud and to order such funds be deposited into escrow as a form of relief. *See S.E.C. v. Cavanagh*, 445 F.3d 105, 120 (2d Cir. 2006). The U.S. Supreme Court in *Liu v. SEC,* 519 U.S. 71, *75 (2020) recognized that courts have historically ordered the proceeds of fraud to be deposited into designated accounts as part of their equitable disgorgement powers, describing this practice as one of the longstanding ways courts have exercised their equitable jurisdiction over wrongdoers' ill-gotten gains. *Id.* The Court confirmed that a disgorgement award that does not exceed a wrongdoer's net profits and that is awarded for victims is permissible as equitable relief under the Securities Exchange Act. *Id.*

As set forth above, Plaintiff has demonstrated sufficient connection and tracing of the Investment Funds to warrant an order directing them to be placed in escrow. The Investment Funds are only a fraction of the MPCM Investors' total loss and do not exceed the more than $100 million that Defendants obtained by fraud. They are therefore subject to attachment and transfer to an escrow account to freeze the proceeds of Defendants' fraud and facilitate the *pro rata* distribution of identifiable funds among injured parties. Accordingly, this Court should exercise its authority to grant the equitable remedy sought herein, which would enable the MPCM Investors to obtain a modest recovery on their losses.

To effectuate this relief, Plaintiff's submit that Verita Trustee and Fiduciary Services as Escrow Agent. Their experience and skill set ae well-suited for this appointment and their engagement terms are reasonable within their industry and commensurate with the size and breadth of this matter. (the "Levin Affirmation"), ¶18.

## CONCLUSION

For all of the foregoing reasons, THE STEERING COMMITTEE ON BEHALF OF THE PARTIES TO THE JPCIA respectfully requests that the Court (i) grant Plaintiff's motion to modify the existing Temporary Restraining Order and Pre-Judgment Order of Attachment entered on September 3, 2026, as amended September 17, 2026, to place funds currently totaling [redacted] (the "Investment Funds") with a neutral, court-approved Escrow Agent, to wit Verita, so that they remain available for recovery by the Plaintiffs; and (ii) award such further relief as the Court deems proper.

Dated: New York, New York
September 21, 2026

**RIMON, P.C.**

By: /s/ Neal H. Levin

Neal H. Levin (NL7164)
Laura-Michelle Horgan (LR7799)
Meghan L. Lavine (4787321)
400 Madison Avenue
New York, NY 10017
Neal.Levin@rimonlaw.com
LMHorgan@rimonlaw.com
Meghan.Lavine@rimonlaw.com

*Attorneys for Plaintiff*