# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE STEERING COMMITTEE ON BEHALF OF THE PARTIES TO THE JPCIA DATED JULY 7, 2026,<br><br>Plaintiff,<br><br>– against –<br><br>PENINSULA CAPITAL TRUST, et al.,<br><br>Defendants. | Case No. 1:26-cv-07519 (MKV)<br><br>Hon. Mary Kay Vyskocil |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF NON-PARTIES FIRST DEGREE FUND VCC (FOR AND ON BEHALF OF ITS SUB-FUNDS), FIRST DEGREE GLOBAL ASSET MANAGEMENT PTE. LTD., AND GIPFEL CAPITALE INSURANCE & UNDERWRITING PARTNERS TO VACATE OR MODIFY THE TEMPORARY RESTRAINING ORDER AND RELATED PREJUDGMENT ATTACHMENT ORDERS (ECF NOS. 5, 38, AND 56), AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION (ECF NO. 57)**

## TABLE OF CONTENTS


Table of Authorities ........ iv

Preliminary Statement ........ 1

Statement of Facts ........ 3

A. Movants and the Sub-Funds ........ 3

B. The Sub-Funds' Capital Structure ........ 4

C. The Sub-Funds' Investment in the Mosaic Fund ........ 5

D. The Flow of Funds ........ 7

E. Plaintiff's Presentation to the Court and the Restraint Orders ........ 10

F. The Effect of the Freeze on the Sub-Funds and Their Investors ........ 12

Argument ........ 13

I. Movants are Properly Before the Court ........ 13

A. CPLR 6223 Authorizes Any Person With an Interest in the Property to Seek Relief Without Appearing ........ 13

B. Movants Reserve All Jurisdictional Objections ........ 13

II. The Restraint Should Be Vacated as to the Sub-Funds' Interests in the Mosaic Fund ........ 14

A. The Restraint Should Reach Only Property in Which a Defendant Has an Interest ........ 14

B. Plaintiff Cannot Carry Its Burden Under CPLR 6223(b) as to These Assets ........ 15

C. Neither Rule 65 Nor Plaintiff's Equitable Claims Authorizes a Freeze of Non-Parties' Property ........ 17

D. The Equities and the Public Interest Favor Movants ........ 18

III. Alternatively, the Court Should Narrow the Restraint ........ 19

A. Any Restraint Should Be Directed at the Shares and Their Proceeds ........ 19

B. In the Further Alternative, the Court Should Release the Non-Manhattan Investment Monies ........ 19

C. Pending Decision, Any Extension or Conversion Should Exclude the Sub-Funds' Interests ........ 20

Conclusion ........ 20

Certificate of Compliance ........ 22

## TABLE OF AUTHORITIES

**Cases**


*Cap. Ventures Int'l v. Republic of Argentina*,
443 F.3d 214 (2d Cir. 2006)....................13

*Deckert v. Independence Shares Corp.*,
311 U.S. 282 (1940)....................18

*Dole Food Co. v. Patrickson*,
538 U.S. 468 (2003)....................15

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*,
527 U.S. 308 (1999)....................17, 18

*Hotel 71 Mezz Lender LLC v. Falor*,
14 N.Y.3d 303 (2010)....................15

*Sussman v. Crawford*,
488 F.3d 136 (2d Cir. 2007)....................19

*Univ. of Tex. v. Camenisch*, 451 U.S. 390 (1981)....................19

*VisionChina Media Inc. v. S'holder Representative Servs., LLC*,
109 A.D.3d 49 (1st Dep't 2013)....................16

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008)....................19

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
395 U.S. 100 (1969)....................18


**Statutes**


N.Y. C.P.L.R. § 6201(3)....................16

N.Y. C.P.L.R. § 6210....................10, 13, 14, 17

N.Y. C.P.L.R. § 6211(a)....................2, 14

N.Y. C.P.L.R. § 6212....................10

N.Y. C.P.L.R. § 6214(a), (b)....................2, 14, 15

N.Y. C.P.L.R. § 6223(a), (b)....................1, 13, 14, 20

Variable Capital Companies Act 2018 (Sing.) § 29....................4 n.2


**Rules**


Fed. R. Civ. P. 44.1....................4 n.2

Fed. R. Civ. P. 64....................10, 13

Fed. R. Civ. P. 65(a)....................17

Fed. R. Civ. P. 65(d)(2)....................18

**<u>Other Authorities</u>**

*Restatement (Third) of Restitution and Unjust Enrichment* § 66 (2011) ......................................18

## PRELIMINARY STATEMENT

Non-parties First Degree Fund VCC ("First Degree VCC"), acting for its sub-funds Litigation Income and Growth Fund (formerly 9Mountains Capital Fund) ("9Mountains") and Six Senses Private Credit ("Six Senses," and together, the "Sub-Funds"), and the Sub-Funds' licensed manager, First Degree Global Asset Management Pte. Ltd. ("First Degree GAM," and with First Degree VCC, the Sub-Funds, and Gipfel Capitale Insurance & Underwriting Partners ("Gipfel"), "Movants"), ask the Court to release from the Restraint Order funds belonging to Movants rather than any Defendant.[1]

Movants do not submit to or consent to personal jurisdiction in New York by making this motion. *See* CPLR 6223(a) (motion to vacate or modify attachment "shall not of itself constitute an appearance in the action").

The Mosaic Fund is in this case because of three representations Plaintiff made to the Court *ex parte*: (1) that the Mosaic Fund holds [redacted] of "MPCM Investor money"; (2) that MPCM "was represented to be the sole equity owner" of the Sub-Funds; and (3) that the money is "owing and payable to MSTN and MPCM." Levin Aff. ¶¶ 5, 7, 10, 13. The Court froze those funds as a temporary measure that, it said, "maintains the status quo." ECF No. 56 at 3. The record now before the Court shows that each of those statements requires reconsideration.

*First*, the Sub-Funds—not MPCM, not MSTN, and not any other Defendant—are the Mosaic Fund's limited partners. Plaintiff's own papers say the Mosaic Fund received its money "[redacted]." Levin Aff. ¶ 7. *Second*, according to First Degree GAM's records, which track the drawdown notices the Mosaic Fund issued, the Sub-Funds transferred approximately

[1] Citations to "Morgan Decl." are to the accompanying Declaration of Anthony John Morgan. "Levin Aff." refers to the unredacted Affirmation of Neal H. Levin dated September 21, 2026 (ECF No. 50).

[redacted] to the Mosaic Fund, not [redacted], a figure that Plaintiff attributes to a single source. Lev Aff. ¶ 7. That is consistent with the [redacted] that Plaintiff reports Mosaic has agreed to return after expenses, which is roughly [redacted] of the Sub-Funds' contributions. *Id.* ¶¶ 11–12. *Third*, about two-thirds of what the Sub-Funds contributed—[redacted]—came from noteholders and a third-party shareholder, none of whom Plaintiff alleges to be a Defendant. The other [redacted] traces to share subscriptions by MSTN and MPCM. But even that capital is the Sub-Funds' asset, and it stands behind the noteholders, who must be paid first.

That matters because attachment, and the temporary restraining order that aids it, reach only property in which a defendant has an interest. CPLR 6211(a), 6214(a). No Defendant has an interest in the Sub-Funds' limited partnership interests in the Mosaic Fund. At most, MSTN and MPCM hold shares in the Sub-Funds—a different, subordinated asset that Movants have offered to protect by undertaking. Plaintiff does not allege that Movants did anything wrong. Its pleading instead alleges that Defendants used Movants' names without authority and that "the fund manager publicly denied any involvement." Am. Compl. ¶ 48 (ECF No. 72).

The freeze also exposes investors against whom no wrongdoing is alleged to substantial harm. 9Mountains owes its noteholders approximately [redacted] in principal and coupons that is past due or falls due by mid-November against approximately [redacted] in cash and liquid assets, and the capital invested in the Mosaic Fund is the noteholders' principal source of repayment. Morgan Decl. ¶ 27(a). Without it, 9Mountains faces default, a call on a separate sub-fund's surety bond, and regulatory consequences in Singapore. *Id.* ¶ 27(c)–(d). Plaintiff, by contrast, gives up nothing it is entitled to: every asset that could be a Defendant's—MSTN's and MPCM's shares and any redemption proceeds—would remain restrained or subject to Movants' undertaking. *Id.* ¶ 23.

On this motion Plaintiff bears the burden of establishing "the grounds for the attachment, the need for continuing the levy and the probability that he will succeed on the merits." CPLR 6223(b). As to the Sub-Funds' interests in the Mosaic Fund, it cannot do so. Movants therefore ask the Court (1) to vacate the restraint as to those interests and to decline to extend or convert it to that extent; (2) alternatively, to direct the restraint at the shares MSTN and MPCM hold in the Sub-Funds, and any redemption proceeds, rather than at the Sub-Funds' interests in the Mosaic Fund; and (3) in the further alternative, to release the Non-Manhattan Investment Monies, defined below.

## STATEMENT OF FACTS

### A. Movants and the Sub-Funds

First Degree GAM is a Singapore fund manager that holds Capital Markets Services Licence No. CMS 100548 from the Monetary Authority of Singapore ("MAS"). Morgan Decl. ¶ 2. Mr. Morgan has been its Chief Executive Officer since it was incorporated in 2011. *Id.* ¶ 1. First Degree VCC is a variable capital company incorporated in Singapore under the Variable Capital Companies Act 2018; it is an umbrella vehicle through which separate sub-funds operate. *Id.* ¶ 3. Under an Investment Management Agreement dated August 21, 2020, First Degree GAM manages First Degree VCC and its sub-funds, including the two at issue here: 9Mountains [redacted], renamed from 9Mountains Capital Fund in July 2026) and Six Senses [redacted]). *Id.* ¶¶ 4–5.[2]

---

[2]A third sub-fund, Gipfel Capitale Insurance & Underwriting Partners ("Gipfel"), issued the performance surety bond described below. Gipfel stands behind the B-LABN holders through the Performance Insurance Surety Bond and faces direct exposure if the Sub-Funds cannot repay the B-LABNs and the A Class and UBO Class capital is insufficient to absorb the shortfall; in that event, Gipfel's obligations are triggered, calling on Gipfel assets for the benefit of the affected noteholders. Morgan Decl. ¶¶ 18, 27(c). As the offering documents explain, each sub-fund's assets

### B. The Sub-Funds' Capital Structure

The Sub-Funds raised two kinds of capital: debt and equity. The debt consists of Blended Litigation Asset-Backed Notes ("B-LABNs"), promissory notes that First Degree VCC issues for the account of a Sub-Fund to eligible investors. Each B-LABN has a fixed coupon and term. B-LABNs are issued in series, and each series' principal, together with the gains and losses attributed to it, forms a segregated pool of "B-LABN Series Assets" from which that series is repaid. Morgan Decl. ¶ 7. 9Mountains issued B-LABNs to 74 noteholders, with aggregate issued principal of approximately [redacted]; some of those notes have since been repaid. *Id.* ¶ 8, 27(a). Six Senses issued B-LABNs to six noteholders, with aggregate principal of approximately [redacted]. *Id.* ¶ 13. Based on First Degree GAM's investor-onboarding and know-your-customer records, the noteholders have no affiliation with MSTN or MPCM. *Id.* ¶¶ 6, 13.

The equity consists of A Class and UBO Class shares. MSTN subscribed for [redacted] on February 16, 2026. MPCM subscribed for [redacted] in five tranches between April 1 and May 15, 2026. *Id.* ¶¶ 9–10. In Six Senses, MPCM subscribed for [redacted] and [redacted] on August 12, 2025; MSTN subscribed for [redacted] between November 15, 2025 and March 2, 2026 and [redacted] on March 2, 2026; and an unaffiliated third party (the "Six Senses Investor") subscribed for [redacted] on January 2, 2026. *Id.* ¶¶ 14–15.

---

are ring-fenced under Singapore law from the liabilities of the VCC and of other sub-funds. *See* Variable Capital Companies Act 2018 (Sing.) § 29.

The offering documents rank the B-LABNs ahead of both equity classes. A shortfall in a note series' assets is charged first to the A Class shares and then to the UBO Class shares; if both are exhausted, a performance surety bond issued by Gipfel in favor of the noteholders responds. *Id.* ¶¶ 12, 17–18. While any B-LABN is outstanding, A Class and UBO Class shares may be redeemed only if the Board or the Manager first determines that, for each series on issue, the series assets at least equal outstanding principal and coupon and are likely to be sufficiently liquid to pay them when due; [redacted]. *Id.* ¶ 12. In practical effect, MSTN's and MPCM's equity is first-loss capital with a contingent, residual claim to whatever remains after the noteholders are paid. *Id.* ¶¶ 20–21.

On April 1, 2026—before First Degree GAM had any knowledge of the conduct alleged in this action—the Manager permitted MPCM, on an extraordinary basis, to redeem [redacted] after determining that the B-LABN series assets, together with the value of the A Class and UBO Class shares then on issue, were at least equal to, and sufficiently liquid to meet, the outstanding note principal and coupons; MPCM used the same amount that day to subscribe for UBO Class shares in 9Mountains to provide capital backing for further 9Mountains B-LABNs. Morgan Decl. ¶¶ 15(b), 33. Those conditions are not satisfied now, and a further redemption would impair the noteholders' priority. *Id.* ¶ 15(b). Movants' undertaking (¶ 23) addresses all future redemptions.

**C. The Sub-Funds' Investment in the Mosaic Fund**

The Mosaic Fund—Mosaic Global Capital UK Fund LP—is a Cayman Islands exempted limited partnership registered with the Cayman Islands Monetary Authority as a private fund. Its general partner is Mosaic Global Capital UK GP LLC, whose principal is Samuel Simpson. Its stated business is originating and funding litigation-finance investments, which the Sub-Funds' offering documents treat as qualifying investments. First Degree GAM decided to invest after

conducting due diligence on the Mosaic Fund's structure and constitutional and offering documents and on Mr. Simpson, and it received no fee or other benefit from the Mosaic Fund in connection with the investment. Morgan Decl. ¶¶ 11, 32.

First Degree holds the interests in the Mosaic Fund for the account of 9Mountains and Six Senses. Morgan Decl. ¶ 32. Mosaic's administrator identifies First Degree VCC, for the account of the relevant Sub-Fund, as the investor. MPCM and MSTN hold only shares in the Sub-Funds and have no ownership interest in the Sub-Funds' underlying assets, including their interests in the Mosaic Fund. Morgan Decl. ¶¶ 20, 32.

Between April 9 and May 18, 2026, the Sub-Funds made five drawdowns into the Mosaic Fund totaling [redacted]: four by 9Mountains [redacted] and one by Six Senses [redacted]. Morgan Decl. ¶¶ 11, 16. First Degree GAM's records identify the source of each:

| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
|---|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |

Morgan Decl. ¶¶ 11, 16, 24 & Ex. 11 (First Degree Funds Mosaic Analysis, dated September 28, 2026). MPCM's [redacted] was not invested in the Mosaic Fund at all, nor was approximately [redacted]. *Id.* ¶ 11. The Non-Manhattan Investment Monies were paid directly into the Sub-Funds' bank accounts by the noteholders and the Six Senses Investor themselves. *Id.* ¶ 31. MSTN and MPCM

represented in their subscription agreements that they were the beneficial owners of the funds subscribed, and they did not indicate that the funds came from MSTN's private note program. *Id.* Identifying the source of the Sub-Funds' capital is not a concession that any Defendant owns the Sub-Funds' interests in the Mosaic Fund; those interests are the Sub-Funds' property. *Id.* ¶¶ 20, 22.

The Offering Supplements identify MPCM as the "Sponsor" of each Sub-Fund and provide that each Sub-Fund will lend a portion of the capital it raises to MPCM under a funding agreement. Morgan Decl. ¶ 4. MPCM has defaulted on its repayment obligations under those agreements. *Id*. The Sub-Funds are therefore creditors of MPCM, not its beneficiaries. The loaned monies went to MPCM's own accounts, not the Mosaic Fund, and the Sub-Funds' claims against MPCM for repayment are not part of this motion.

**D. The Flow of Funds**

Investors first put cash into 9Mountains and Six Senses, not into Mosaic. The 9Mountains and Six Senses noteholders advanced principal under B-LABN Funding Agreements and received B-LABNs—promissory notes issued by First Degree VCC for the account of the relevant Sub-Fund. Those notes are debt obligations of the Sub-Fund, and the noteholders' rights run against the Sub-Fund, not the Mosaic Fund. MPCM, MSTN, and the Six Senses Investor separately subscribed for A Class and UBO Class shares in the Sub-Funds. Those subscriptions are equity inside the Sub-Funds, not direct interests in Mosaic. Morgan Decl. ¶¶ 7–10, 13–17.

Under the Sub-Funds' capital structure, the B-LABNs rank ahead of the A Class and UBO Class shares. Any shortfall is charged first to the A Class shares and then to the UBO Class shares, and those shares are subject to the offering documents' restrictions while B-LABNs are outstanding. MPCM and MSTN therefore have no ownership interest in the underlying Sub-Fund assets and at most hold a contingent redemption right subject to the offering documents'

restrictions on redemption while B-LABNs are outstanding. They are not investors in, limited partners of, or holders of any interest in the Mosaic Fund; they hold only Sub-Fund shares. Morgan Decl. ¶¶ 9–10, 12, 14–17, 20–21.

Exercising authority granted by Clause 2.2 of the IMA, First Degree GAM invested Sub-Fund cash in the Mosaic Fund on behalf of 9Mountains and Six Senses. 9Mountains invested [redacted] in four drawdowns between April 9 and May 18, 2026. Of that amount, [redacted] came from B-LABN holders and [redacted] came from MSTN A Class share subscriptions. Six Senses invested [redacted] on April 9, 2026, consisting of [redacted] from B-LABN holders, [redacted] from MSTN A Class shares, [redacted] from MPCM A Class shares, and [redacted] from the Six Senses Investor. Morgan Decl. ¶¶ 5, 11, 16, 24.

Those figures trace the source of the cash that the Sub-Funds invested. The [redacted] in Non-Manhattan Investment Monies was paid into 9Mountains and Six Senses by the B-LABN holders and the Six Senses Investor themselves; none was contributed, advanced, or financed by MSTN, MPCM, or any other Defendant. But source tracing does not change who owns the investment. The [redacted] traceable to Manhattan-associated share classes identifies only the source of a portion of Sub-Fund capital and does not mean that any part of the Mosaic investment is Manhattan property. The entire [redacted] invested in Mosaic is property of the Sub-Funds. Morgan Decl. ¶¶ 19(c), 20, 22, 31.

The resulting Mosaic interests are held by First Degree VCC for the account of 9Mountains and Six Senses, and each Sub-Fund's assets and liabilities are segregated. The September 23 Order freezes the £9,148,525.50 in "Mosaic-Held Investor Funds" currently in Mosaic's possession but not yet invested by Mosaic. Mosaic is therefore the fund holding the cash; First Degree VCC, for

the segregated Sub-Funds, is the investor whose interests are restrained. Morgan Decl. ¶¶ 20, 32, 35.

Gipfel stands behind the B-LABN holders through the Performance Insurance Surety Bond. If the Sub-Funds cannot repay the B-LABNs and the A Class and UBO Class capital is insufficient to absorb the shortfall, Gipfel's obligations are triggered, calling on segregated Gipfel assets for the benefit of the affected noteholders. Morgan Decl. ¶¶ 18, 27(c).

This structure explains why Movants are proper parties to seek relief under CPLR 6223. First Degree VCC holds the frozen interests; the Sub-Funds are the segregated pools whose assets are frozen and whose obligations come due; First Degree GAM is the authorized investment manager empowered to acquire, monitor, and realize the investments and to manage the liquidity needed to meet the B-LABN obligations; and Gipfel faces its own direct exposure under the Surety Bond. A payment default would also likely require First Degree GAM to suspend 9Mountains and make a suspension report to MAS. Morgan Decl. ¶¶ 1, 5, 7–8, 12–13, 17–18, 20–21, 27(c)–(d), 32, 35.

By contrast, the noteholders hold debt claims against the Sub-Funds, not direct interests in Mosaic, and the Manhattan shareholders hold subordinate equity with only contingent, restricted redemption rights. Neither the noteholders nor the Manhattan shareholders is a counterparty of Mosaic. Mosaic's only counterparty is First Degree VCC for the account of the segregated Sub-Funds. Mosaic's records identify its investor only as First Degree VCC for the account of the relevant Sub-Fund, and Mosaic has no role in determining or enforcing the Sub-Funds' internal priority waterfall. Its concern is with the entire £9,148,525.50 frozen pool, not with how the Sub-Funds' [redacted] investment is allocated among classes. Mosaic therefore cannot adequately represent the interests at stake or explain why the equity traceable to MPCM and MSTN is

subordinate first-loss capital rather than Defendant property. Morgan Decl. ¶¶ 19(a), 20–22, 32, 35.

### E. Plaintiff's Presentation to the Court and the Restraint Orders

On September 3, 2026, the Court, *ex parte*, entered a TRO under CPLR 6210 and Fed. R. Civ. P. 64 and a preliminary order of attachment under CPLR 6212 over the accounts identified in Schedule A to Plaintiff's first Levin affirmation. ECF No. 5 at 7. It found an identifiable risk that Defendants would be unable to satisfy a judgment based on their "history of asset dissipation and concealment, missed payment schedules, and payment delays." *Id.* at 6. It recognized that Plaintiff did not rely on Rule 65, *id.* at 4 n.3, and told the parties they "may challenge the issuance of this order." *Id.* at 8. On September 17, the Court denied Plaintiff's *ex parte* request to convert the TRO into a preliminary injunction, extended the TRO for fourteen days "to maintain the status quo," and added newly discovered accounts. ECF No. 38 at 3–5.

On September 21, Plaintiff filed a second *ex parte* application to appoint an escrow agent to receive £6,801,454 that, it said, the Mosaic Fund had agreed to return. ECF Nos. 47, 49–51. Plaintiff's counsel affirmed that MSTN's and MPCM's funds "were then used as equity capital for the sub-funds"; that "MPCM was represented to be the sole equity owner of those sub-funds"; that the Mosaic Fund "received an aggregate of GBP £9,148,525.50 from 6S and 9M"; that the funds it holds "are attributable to the same pool of MPCM Investor money at issue in this action"; and that they "would otherwise have been owing and payable to MSTN and MPCM." Levin Aff. ¶¶ 5, 7, 10, 13. Counsel also told the Court that the requested relief "would not determine ultimate ownership, lien priority, tracing, setoff, allocation, or entitlement to distribution." *Id.* ¶ 14.

On September 23, the Court denied the escrow request but extended the TRO to "the GBP £9,148,525.50 in funds that is currently in the possession of the Mosaic Fund but has not yet been invested by the Mosaic Fund," providing that the TRO "will expire on October 1, 2026" and that

"[t]he temporary freezing of the Mosaic-Held Investor Funds maintains the status quo." ECF No. 56 at 3. The same day, Plaintiff moved to convert the TRO into a preliminary injunction and continue the attachment, relying in part on the fact that "no Defendant" had moved to dissolve it. ECF No. 57 at 7, 13. The Court has declined to set a briefing schedule until Plaintiff properly serves all Defendants. ECF No. 55 at 3.

Plaintiff's Amended Complaint, filed September 29, does not name First Degree GAM, First Degree VCC, or any Sub-Fund as a defendant and alleges no wrongdoing by any of them. It alleges that Defendants told investors their funds were backed by First Degree GAM and its funds; that "the fund manager publicly denied any involvement"; and that "[n]o available document confirms the quantum of MPCM Note proceeds that were actually transmitted along this represented chain." Am. Compl. ¶¶ 46, 48, 57. Plaintiff has also acknowledged that there may be additional equity holders in the Sub-Funds but that this "has not yet been confirmed." ECF No. 66 at 5 n.2.

Movants had no role in the alleged fraud. First Degree GAM did not issue, market, or sell the MSTN notes, and it had no knowledge of the conduct alleged here when the Sub-Funds accepted MSTN's and MPCM's subscriptions or invested in the Mosaic Fund; the last drawdown was on May 18, 2026. Morgan Decl. ¶ 33. When First Degree GAM learned in early June that MSTN or MPCM was using Gipfel's name without authority, it sent a cease-and-desist letter (June 3) and posted a public warning (June 17) *Id.* ¶ 34. Movants had no notice of Plaintiff's application before the TRO was entered, and Mr. Morgan first received a copy of the TRO from Plaintiff's counsel on the evening of September 14. *Id.* ¶¶ 28(d), 36. First Degree GAM disputes Plaintiff's statement that it agreed in principle to return funds: Mr. Morgan explained the Sub-Funds' structure to Plaintiff's counsel on August 21, September 5, and twice on September 14, and First

Degree GAM never gave its agreement in principle and had neither agreed to nor finished reviewing the proposed settlement and release agreement when Plaintiff filed its September 21 application. *Id.* ¶¶ 19(d)-(e), 28. On September 30, Plaintiff's counsel advised that Plaintiff takes no position on this motion at this time. Conform to counsel's declaration.

**F. The Effect of the Freeze on the Sub-Funds and Their Investors**

9Mountains' B-LABNs mature on a rolling basis between July 1 and November 14, 2026. Morgan Decl. ¶ 27(a). [redacted]. *Id.* [redacted] *Id.* Without the return of the capital invested in the Mosaic Fund, 9Mountains will be unable to pay. *Id.*

A payment default would be an event of default under the notes. It would likely require First Degree GAM to suspend 9Mountains and report to MAS, could lead to winding up the sub-fund, and would significantly damage First Degree GAM's standing with MAS. *Id.* ¶ 27(d). It would also call on Gipfel's surety bond, drawing on the assets of a separate sub-fund. *Id.* ¶ 27(c).

Six Senses is differently situated. [redacted] *Id.* ¶¶ 13, 27(b). [redacted] Morgan Decl. ¶¶ 24(b), 31.

# ARGUMENT

## I. MOVANTS ARE PROPERLY BEFORE THE COURT

### A. CPLR 6223 Authorizes Any Person With an Interest in the Property to Seek Relief Without Appearing

The Court restrained the Mosaic funds under CPLR 6210 and Rule 64, which makes available in federal court the state-law remedy of attachment. ECF No. 5 at 3–4; ECF No. 56 at 3; *Cap. Ventures Int'l v. Republic of Argentina*, 443 F.3d 214, 218–19 (2d Cir. 2006). The same statutory scheme supplies the means to challenge it: "the defendant, the garnishee or any person having an interest in the property or debt may move, on notice to each party and the sheriff, for an order vacating or modifying the order of attachment." CPLR 6223(a). Such a motion "shall not of itself constitute an appearance in the action." *Id.* And on it, "the plaintiff shall have the burden of establishing the grounds for the attachment, the need for continuing the levy and the probability that he will succeed on the merits." CPLR 6223(b).

Movants are persons "having an interest in the property." First Degree VCC is the limited partner of record in the Mosaic Fund, for the account of each Sub-Fund. The noteholders and the Six Senses Investor hold contractual rights in the Sub-Fund assets that include the Mosaic interests, and First Degree GAM is the manager charged with protecting those rights. Morgan Decl. ¶¶ 5, 7, 12. Plaintiff's own papers describe the Mosaic Fund as holding money the Sub-Funds contributed. Levin Aff. ¶¶ 7, 11. And the Court told the parties at the outset that they "may challenge the issuance of this order." ECF No. 5 at 8. Plaintiff bears the burden of establishing a basis for continuing a restraint that reaches property claimed by non-parties.

### B. Movants Reserve All Jurisdictional Objections

Movants do not submit to or consent to the personal jurisdiction of this Court. This application is made solely pursuant to CPLR 6223, which provides that a motion to vacate or

modify an order of attachment "shall not of itself constitute an appearance in the action." CPLR 6223(a). Movants appear only to protect property in which they have an interest. They do not consent to personal jurisdiction, waive service, or seek relief on the merits. *See* CPLR 6223(a).

## II. THE RESTRAINT SHOULD BE VACATED AS TO THE SUB-FUNDS' INTERESTS IN THE MOSAIC FUND

### A. The Restraint Should Reach Only Property in Which a Defendant Has an Interest

Article 62 is a remedy against a defendant's property. An order of attachment directs the sheriff to levy "upon such property in which the defendant has an interest and upon such debts owing to the defendant." CPLR 6211(a). The sheriff "shall levy upon any interest of the defendant in personal property, or upon any debt owed to the defendant." CPLR 6214(a). And the § 6210 TRO is a prohibition on "the transfer of assets by a garnishee as provided in subdivision (b) of section 6214," *i.e.*, of property so levied. CPLR 6210. The Court of Appeals framed the question the same way in *Hotel 71 Mezz Lender LLC v. Falor*, asking whether the "defendants' ownership/membership interests" in other entities were attachable. 14 N.Y.3d 303, 307 (2010). The Court's own orders follow that limit; the discovery authorization, for example, extends to "accounts belonging to Defendants." ECF No. 5 at 7.

*The Mosaic interests belong to the Sub-Funds.* Any obligation of the Mosaic Fund to return capital runs to its limited partners. The limited partner is First Degree VCC for the account of each Sub-Fund, as Mosaic's own administrator records it. Plaintiff's sources say the same: the Mosaic Fund received its money "from 6S and 9M," and what it has agreed to release is "the balance received from 6S and 9M." Levin Aff. ¶¶ 7, 11. The assertion that the money is "owing and payable to MSTN and MPCM," *id.* ¶ 13, is supported by no subscription agreement, capital account statement, or other document. No Defendant is a party to the Mosaic subscription agreements, and none has a claim against the Mosaic Fund.

*What MSTN and MPCM hold is a different asset.* They hold shares in the Sub-Funds. A shareholder does not own the entity's assets. *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 474–75 (2003). Here, moreover, the shares are the most junior claim in the structure: they absorb losses first, confer no right to the underlying assets, and can be redeemed only if the Board or Manager determines that, for each series on issue, the series assets at least equal outstanding principal and coupon and are likely to be sufficiently liquid to pay them when due (and, for UBO Class shares, only after a one-year lock-up). Morgan Decl. ¶¶ 12, 20–21. Whatever a judgment creditor of MSTN or MPCM could reach by attaching those shares, it would reach subject to that ranking; it could not reach the noteholders' capital, which ranks ahead. Plaintiff's "chain" theory—that money once used to subscribe for shares makes the issuer's later investments the subscriber's property—describes a shareholder, not an owner. Whether an equitable tracing theory could do more is addressed in Section II.C.

**B. Plaintiff Cannot Carry Its Burden Under CPLR 6223(b) as to These Assets**

*Grounds.* The Court's ground for attachment at the *ex parte* stage concerned Defendants. It found an identifiable risk that "Defendants" would be unable to satisfy a judgment, citing their "history of asset dissipation and concealment, missed payment schedules, and payment delays." ECF No. 5 at 6; *see VisionChina Media Inc. v. S'holder Representative Servs., LLC*, 109 A.D.3d 49, 60 (1st Dep't 2013) (plaintiff must show "an identifiable risk that the defendant will not be able to satisfy the judgment"). None of that concerns Movants. Nor does CPLR 6201(3)—which requires that "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment . . . has assigned, disposed of, encumbered or secreted property"—supply a ground as to this property. Plaintiff's own theory is that the transfers into the Sub-Funds were "a late stage, feeble attempt to appear to be investing in legitimate, regulated funds." Levin Aff. ¶ 4. That asserted purpose does not, without more, establish an intent to place property beyond the reach of

judgment creditors. And what MSTN and MPCM received in exchange for their subscriptions—shares in a licensed manager's sub-funds—remains identifiable and can be restrained. Indeed, Plaintiff's own estimate that only about 5% of the total MSTN note proceeds traveled through this chain, ECF No. 66 at 7-8, underscores that the Sub-Funds were not a conduit for the alleged fraud but received only a small fraction of the proceeds at issue.

*Need for continuing the levy.* The premise of the Court's status-quo finding was that funds in Defendants' hands could be dispersed beyond the Court's reach. ECF No. 5 at 5. That is not this case. The Sub-Funds' interests are held through a manager licensed and supervised by MAS, in a fund whose principal has agreed to return them, and Movants have undertaken that nothing will be redeemed, transferred, or distributed on MSTN's or MPCM's shares or their proceeds without notice to Plaintiff and leave of Court. Morgan Decl. ¶¶ 2. 23. Plaintiff's stated concern in seeking an escrow was that returned funds would revert "to the control of the Defendant fraudsters." ECF No. 66 at 6. They would not: returned capital goes to the Sub-Funds, which owe it first to the noteholders.

*Plaintiff's presentation does not survive scrutiny.* Plaintiff's showing rested on the premise that MPCM was the sole equity owner of the Sub-Funds, a premise its own papers now hedge, ECF No. 66 at 5 n.2; on a £9.15 million figure, attributed to Mr. Simpson, that exceeds is about £2.3 million higher than the £6,801,454 that Plaintiff itself says the Mosaic Fund has agreed to return, Levin Aff. ¶¶ 7, 11–12; Morgan Decl. ¶¶ 11, 19(a); and on the premise that the money is a single "pool" of MPCM investor money, Levin Aff. ¶ 14, when roughly [redacted] of the capital the Sub-Funds invested came from noteholders and a third-party shareholder. Morgan Decl. ¶ 24. Plaintiff told the Court that its request "would not determine . . . tracing," Levin Aff. ¶ 14, and its pleading says that no document confirms how much of the MPCM notes' proceeds reached the

Sub-Funds. Am. Compl. ¶ 57. A restraint on non-parties' property cannot rest on tracing that Plaintiff concedes it has not been done.

### C. Neither Rule 65 Nor Plaintiff's Equitable Claims Authorizes a Freeze of Non-Parties' Property

In its preliminary injunction motion, Plaintiff alternatively invokes Rule 65(a) and its equitable claims in an effort to distinguish *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999). ECF No. 57 at 14–16. *Grupo Mexicano* holds that a district court lacks authority under Rule 65 to freeze a defendant's assets to secure a money judgment, 527 U.S. at 333, which is why the Court rested the TRO on CPLR 6210. ECF No. 5 at 4 n.3. Even if Plaintiff's equitable claims could support a Rule 65 injunction against Defendants' traceable assets, they cannot support one against Movants, for three reasons.

*First*, the equitable claims run against Defendants. They seek a constructive trust over funds "traceable to Plaintiffs' investment" that Defendants hold. Am. Compl. ¶¶ 143–145. The Sub-Funds are not parties, and a Rule 65 injunction binds only the parties, their officers and agents, and persons in active concert with them. Fed. R. Civ. P. 65(d)(2). Entering one against a non-party without finding active concert is error. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110, 112 (1969). Plaintiff does not allege, and the record does not show, that Movants act in concert with Defendants; its own pleading says the fund manager disclaimed any involvement. Am. Compl. ¶ 48.

*Second*, the cases Plaintiff cites permit a freeze to preserve specific property that is the subject of an equitable claim—property the defendant holds for the plaintiff. ECF No. 57 at 16–18 (citing *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 289–90 (1940)). Plaintiff cannot show that the Sub-Funds hold the Mosaic interests for Defendants. The limited partner is First Degree VCC for the Sub-Funds' account, and most of the capital came from noteholders and a

third-party shareholder. A constructive trust is a remedy against the wrongdoer and those who take from the wrongdoer with notice or without value; it does not reach a bona fide purchaser for value without notice. *See* Restatement (Third) of Restitution and Unjust Enrichment § 66 (2011). The Sub-Funds gave value—shares and note obligations—and had no notice of the alleged fraud. Morgan Decl. ¶ 33. Plaintiff's own pleading confirms as much: the Amended Complaint alleges that Defendants used Movants' names without authority and that "the fund manager publicly denied any involvement." Am. Compl. ¶ 48. At most, an equitable claim could follow what Defendants received in exchange for their money: the shares. Movants offer to protect them (Section III.A).

*Third*, Plaintiff's tracing is, by its own account, incomplete. *See* Section II.B.

**D. The Equities and the Public Interest Favor Movants**

A preliminary injunction is "an extraordinary and drastic remedy" that requires "a clear showing" on each of the four factors. *Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007) (per curiam); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008). As to Movants' property, Plaintiff can make none. It has no claim against Movants, and its likelihood of success against Defendants says nothing about property Defendants do not own. The Court's earlier findings addressed Defendants. ECF No. 5 at 5–6. Nor does Plaintiff identify irreparable harm from the return of funds to a licensed manager that is bound by an undertaking. The purpose of preliminary relief is "to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Movants are not parties whose positions need preserving, and freezing their property changes their position rather than preserving anyone's.

The balance of equities runs the other way. On one side are the Sub-Funds' noteholders (74 in 9Mountains and six in Six Senses) and a third-party shareholder against whom Plaintiff alleges no wrongdoing, real payment obligations falling due on a known schedule, and a licensed

manager facing suspension and regulatory consequences if it cannot meet them. Morgan Decl. ¶ 27. Plaintiff's own papers stress the public interest in protecting "ordinary investors who entrust their savings" to what they believe are legitimate vehicles. ECF No. 57 at 24. The noteholders are such investors.

On the other side, Plaintiff loses nothing it is entitled to. Whatever MSTN's and MPCM's shares may someday be worth is set by the capital structure: it is what remains after senior obligations are paid, and it cannot be enlarged by freezing the noteholders' capital. Restraining the shares and their proceeds, and accepting Movants' undertaking, gives Plaintiff all the protection the law allows.

## III. ALTERNATIVELY, THE COURT SHOULD NARROW THE RESTRAINT

### A. Any Restraint Should Be Directed at the Shares and Their Proceeds

If the Court is not prepared to vacate the restraint as to the Mosaic interests, it should narrow it to the only property in which Defendants arguably hold an interest: the shares MSTN and MPCM hold in the Sub-Funds, and any redemption or distribution proceeds on them. Plaintiff's stated concern is that returned money would reach the Manhattan Defendants. ECF No. 66 at 6. Restraining the shares and proceeds meets that concern directly. Movants have undertaken that, pending further order, they will not redeem, transfer, or make any distribution or payment on the shares held by MPCM or MSTN, or on any redemption proceeds attributable to them, without prior notice to Plaintiff and leave of Court. Morgan Decl. ¶ 23. The Court may so order as a modification under CPLR 6223(a).

### B. In the Further Alternative, the Court Should Release the Non-Manhattan Investment Monies

At a minimum, the Court should exclude from any restraint the capital that came from noteholders and the Six Senses Investor: [redacted] of the Sub-Funds' contributions

[redacted] (the "Non-Manhattan Investment Monies"). Morgan Decl. ¶¶ 19(c), 24. That capital came from investors Plaintiff does not allege to be Defendants, was paid directly into the Sub-Funds' accounts by those investors, *id.* ¶ 31, and ranks ahead of anything MSTN and MPCM hold. Because the Mosaic Fund has indicated that it may deduct fund expenses from any returned capital, Morgan Decl. ¶ 24(c); Levin Aff. ¶¶ 11–12, the release should be expressed as 67.8% of the amount the Mosaic Fund actually returns, with expenses shared pro rata, rather than as a fixed sum. Movants seek this relief without prejudice to their position that all of the Mosaic interests belong to the Sub-Funds. *Id.* ¶ 22. The released funds would be returned to First Degree VCC for the account of the relevant Sub-Fund, under Movants' undertaking and subject to such reporting as the Court directs.

### C. Pending Decision, Any Extension or Conversion Should Exclude the Sub-Funds' Interests

Because the TRO is set to expire on October 1 and Plaintiff asks the Court to extend or convert it, Movants ask that any extension or conversion exclude the Sub-Funds' interests in the Mosaic Fund pending decision on this motion.

## CONCLUSION

For these reasons, Movants respectfully request that the Court enter an order (1) vacating the Restraint Orders as to the Sub-Funds' interests in, and contributions to, the Mosaic Fund, and declining to extend or convert them to that extent; (2) in the alternative, modifying the Restraint Orders so that any restraint attaches only to the shares held by MPCM and MSTN in the Sub-Funds and any redemption proceeds or distributions on those shares, subject to Movants' undertaking; (3) in the further alternative, modifying the Restraint Orders to exclude the Non-Manhattan Investment Monies, expressed as 67.8% of the amounts the Mosaic Fund returns, with the Mosaic Fund's expenses borne pro rata, and permitting the Mosaic Fund to return those

amounts to First Degree VCC for the account of the relevant Sub-Fund; and (4) granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
September 30, 2026

Respectfully submitted,

*/s/ Aaron Miner*__

Aaron Miner
Lisa Cordara
Melissa Romanovich
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Telephone: 212.836.8000
Fax: 212.836.8689
Aaron.Miner@arnoldporter.com
Lisa.Cordara@arnoldporter.com
Melissa.romanovich@arnoldporter.com

*Attorneys for Non-Parties First Degree Fund VCC (for and on behalf of Litigation Income and Growth Fund and Six Senses Private Credit), First Degree Global Asset Management Pte. Ltd., and Gipfel Capitale Insurance & Underwriting Partners.*

## **CERTIFICATE OF COMPLIANCE**

I certify pursuant to Local Civil Rule 7.1(c) that the foregoing memorandum of law contains 6,550 words, exclusive of the caption, table of contents, table of authorities, signature block, and this certificate, as counted by the word-processing program used to prepare it, and that it does not exceed the 8,750-word limit. I further certify pursuant to Rule 4(A)(iii) of the Court's Individual Rules of Practice in Civil Cases that the memorandum does not exceed twenty-five pages, is set in 12-point font, is double-spaced, and is text-searchable.

Dated: September 30, 2026