# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE STEERING COMMITTEE ON BEHALF OF THE PARTIES TO THE JPCIA DATED JULY 7, 2026,<br><br>Plaintiff,<br><br>– against –<br><br>PENINSULA CAPITAL TRUST, et al.,<br><br>Defendants. | Case No. 1:26-cv-07519-MKV |

**DECLARATION OF ANTHONY JOHN MORGAN IN SUPPORT OF NON-PARTIES FIRST DEGREE FUND VCC (FOR AND ON BEHALF OF ITS SUB-FUNDS), FIRST DEGREE GLOBAL ASSET MANAGEMENT PTE. LTD., AND GIPFEL CAPITALE INSURANCE & UNDERWRITING PARTNERS TO VACATE OR MODIFY THE TEMPORARY RESTRAINING ORDER AND PRE-JUDGMENT ORDER OF ATTACHMENT (ECF NOS. 5, 38, AND 56), AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION (ECF NO. 57)**

I, Anthony John Morgan, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I am the Chief Executive Officer of First Degree Global Asset Management Pte. Ltd. ("First Degree") (UEN: 201110570G), a company incorporated in the Republic of Singapore, with its registered office at 68/69 Amoy Street #03-00, Singapore 069887. I have served as CEO of First Degree since its incorporation in 2011. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto. I am authorized to make this declaration on behalf of First Degree, both in its own right and as investment manager of First Degree Fund VCC ("First Degree VCC") and its sub-funds. The statements below are based on my personal knowledge, including my review of books and records that First Degree, First Degree VCC, and its sub-funds maintained in the ordinary course of business.

2. First Degree holds Capital Markets Services Licence No. CMS 100548, issued by the Monetary Authority of Singapore ("MAS"), authorizing First Degree to carry on business in fund management. First Degree is regulated by the MAS and is subject to ongoing supervisory oversight in connection with its fund management activities. Attached hereto as **Exhibit 1** is a true and correct copy of the Capital Markets Services Licence No. CMS 100548 issued to First Degree by the MAS on January 23, 2024.

3. First Degree Fund VCC (UEN: T20VC0066K) is a variable capital company incorporated in the Republic of Singapore under the Variable Capital Companies Act 2018 of Singapore, with its registered office at 68 Amoy Street, #03-00, Singapore (069887). First Degree VCC serves as an umbrella fund vehicle through which multiple sub-funds may be established and operated. Attached hereto as **Exhibit 2** is a true and correct copy of the Accounting and Corporate Regulatory Authority ("ACRA") BizFile for First Degree VCC T20VC0066K, dated September 30, 2026; attached hereto as **Exhibit 2A** is a confirmation from ACRA of the name change of 9Mountains Capital Fund to 9Mountains Income and Growth Fund, dated July 6, 2026; and attached hereto as **Exhibit 2B** is a confirmation from ACRA of the name change of 9Mountains Income and Growth Fund to Litigation Income and Growth Fund, dated July 14, 2026.

4. First Degree VCC has formed and registered with ACRA the following sub-funds relevant to this proceeding (each, a "Sub-Fund" and collectively, the "Sub-Funds"):

a. Gipfel Capitale Insurance & Underwriting Partners (Sub-fund No.: T20VC0066K-SF010) ("Gipfel");

b. Litigation Income and Growth Fund (formerly known as 9Mountains Capital Fund) (Sub-fund No.: T20VC0066K-SF007) ("9Mountains"); and

c. Six Senses Private Credit (Sub-fund No.: T20VC0066K-SF013) ("Six Senses").

*See* **Exhibit 2**.

5. First Degree VCC and First Degree entered into an Investment Management Agreement, dated August 21, 2020 (the "IMA"), pursuant to which First Degree was appointed as the investment manager of First Degree VCC and its Sub-Funds. In relevant part, the Sub-Funds executed Acceptance Agreements under the IMA: 9Mountains (then known as Crown Global Growth Fund) executed its Acceptance Agreement on February 14, 2022; Gipfel (then known as Blackbridge 9Mountains Fund 2) executed its Acceptance Agreement on August 31, 2022; and Six Senses executed its Acceptance Agreement on December 21, 2024. Attached hereto as **Exhibit 3** is a true and correct copy of the Investment Management Agreement, dated August 21, 2020. Under Clause 2.2 of the IMA, First Degree is authorized to identify, evaluate, structure, acquire, monitor, and realize investments for the account of First Degree VCC and its Sub-Funds, subject to First Degree VCC's governing documents, Board directions, and applicable law.

6. The Sub-Funds raise capital through a combination of short-term notes and equity. The equity capital was intended, in part, to support repayment of the notes, while the investment strategy contemplated investments with a longer duration than the notes. Based on First Degree's investor onboarding and know-your-customer records, the noteholders—as set forth more fully below—are third-party investors who, to my knowledge, have no affiliation with Manhattan ST Notes, LLC ("MSTN") or Manhattan Private Credit Markets LLC ("MPCM" and, together with MSTN, "Manhattan").

7. Blended Litigation Asset-Backed Notes ("B-LABNs") are promissory notes issued by First Degree VCC for the account of a Sub-Fund to eligible investors, each of whom advances the note principal to the Sub-Fund under a B-LABN Funding Agreement. Each B-LABN carries a fixed coupon and a fixed term. B-LABNs are issued in separate series as of each issue date, and

at least [redacted] of the principal of each B-LABN series is applied to litigation program investments, and each series' principal, together with the gains, losses, and other assets and liabilities attributed to it, forms a segregated pool of B-LABN Series Assets from which that series is repaid.

8. 9Mountains has issued B-LABNs to seventy-four different investors. The aggregate principal amount of the issued 9Mountains B-LABNs is approximately [redacted] [redacted].[1] 9Mountains B-LABNs have a six-month term and an [redacted], and the maturity dates of the outstanding 9Mountains B-LABNs fall between July 1, 2026 and November 14, 2026. Attached hereto as **Exhibit 4** is a true and correct copy of the 9Mountains Offering Supplement, dated April 4, 2026.

9. MSTN subscribed for A Class Shares in 9Mountains in the amount of [redacted] on February 16, 2026. Attached hereto as **Exhibit 5** is a true and correct copy of the 9Mountains Subscription Agreement for MSTN's A Class Shares, dated February 3, 2026.

10. MPCM subscribed for UBO Class Shares in 9Mountains as follows:

a. In the amount of [redacted] on April 1, 2026. Attached hereto as **Exhibit 6** is a true and correct copy of the 9Mountains Subscription Agreement for MPCM's UBO Class Shares, dated March 23, 2026, in respect of this subscription;

b. In the amount of [redacted] on April 1, 2026. Attached hereto as **Exhibit 7** is a true and correct copy of the 9Mountains Additional Subscription Form for MPCM's UBO Class Shares, dated April 7, 2026, in respect of this subscription;

[1] These B-LABNs were issued in different currencies, and this is based on foreign exchange rates at the time.

c. In the amount of [redacted] on April 15, 2026. Attached hereto as **Exhibit 8** is a true and correct copy of the 9Mountains Additional Subscription Form for MPCM's UBO Class Shares, dated April 16, 2026, in respect of this subscription;

d. In the amount of [redacted] on May 4, 2026. Attached hereto as **Exhibit 9** is a true and correct copy of the 9Mountains Additional Subscription Form for MPCM's UBO Class Shares, dated April 29, 2026, in respect of this subscription; and

e. In the amount of [redacted] on May 15, 2026. Attached hereto as **Exhibit 10** is a true and correct copy of the 9Mountains Additional Subscription Form for MPCM's UBO Class Shares, dated May 13, 2026, in respect of this subscription

for an aggregate subscription in the amount of [redacted].

11. Between April 9 and May 18, 2026, 9Mountains invested a total of [redacted] in the Mosaic Global Capital UK Fund LP (the "Mosaic Fund"), a Cayman Islands exempted limited partnership, in four drawdowns. The table below shows, for each drawdown, how much of the capital came from B-LABN holders, and how much came from A Class Shares subscribed by MSTN:

[redacted]

Attached hereto as **Exhibit 11** is a true and correct copy of the First Degree Funds Mosaic Analysis. Of the [redacted] in issued 9Mountains B-LABN principal, [redacted] was not invested in the Mosaic Fund. The [redacted] invested was in line with the investment strategy for the B-LABNs, as set out in the offering supplement. Approximately [redacted] of MSTN's [redacted] A Class subscription was not included in the Mosaic Fund drawdowns. The approximately [redacted] invested was in line with the investment strategy for A Class Shares, as set out in the offering supplement. Likewise, the MPCM UBO Class subscription was not included in the Mosaic Fund drawdowns. Accordingly, the records demonstrate that only [redacted] from Manhattan-associated share classes was invested by 9Mountains in the Mosaic Fund.

12. Under the capital structure of 9Mountains, the B-LABNs rank in priority ahead of both the A Class Shares and the UBO Class Shares. The fund documents require the manager to ensure that assets are sufficient and sufficiently liquid to meet outstanding note obligations, while preserving discretion over liquidity management. While any B-LABNs are outstanding, A Class Shares and UBO Class Shares may be redeemed only if the Board of the Manager determines that in respect of each B-LABN Series on issue, the B-LABN Series Assets at least equal the outstanding B-LABN Series Principal Amount and the applicable outstanding B-LABN Series Interest Period Coupon Amount, and the assets available to pay those amounts are sufficiently liquid to pay them as and when they fall due. Specifically:

a. Any shortfall in the return of capital is charged first to the A Class Shares before any loss is attributed to the B-LABN holders;

b. Any remaining shortfall, after the A Class Shares have been fully exhausted, is then charged to the UBO Class Shares;

c. The A Class Shares and UBO Class Shares may not be redeemed except in the circumstances described above, and UBO Class Shares may not in any event be redeemed during the one-year period following their date of issue; and

d. If both the A Class and UBO Class have been fully exhausted and a shortfall to the B-LABN holders remains, the shortfall is charged to Gipfel under the Performance Insurance Surety Bond issued in favor of the B-LABN holders (the "Surety Bond").

*See* **Exhibit 4**.

13. Six Senses has issued B-LABNs to six different investors. The aggregate principal amount of the issued Six Senses B-LABNs is approximately [redacted]. Six Senses B-LABNs have a one-year term with fixed coupons of [redacted] for the first six months, [redacted] for the following three months, and [redacted] for the final three months, together with a capped priority distribution coupon. The maturity dates of the outstanding Six Senses B-LABNs fall between November 14, 2026 and March 31, 2027. The fund documents also require the manager to consider whether sufficient liquid assets are available to meet the notes before permitting equity redemptions. As with the 9Mountains B-LABN holders, the Six Senses B-LABN holders are third-party investors who, to my knowledge, have no affiliation with MSTN or MPCM. Attached hereto as **Exhibit 12** is a true and correct copy of the Six Senses Offering Supplement, dated April 4, 2026.

14. The following subscriptions for A Class Shares in Six Senses have been effected:

a. MPCM subscribed for A Class Shares in the amount of [redacted] on August 12, 2025;

b. MSTN subscribed for A Class Shares in the amount of [redacted] between November 15, 2025 and March 2, 2026. Attached hereto as **Exhibits 13, 14 and 15** are true and correct copies of the Six Senses Subscription Agreements for MSTN's A Class Shares, dated October 22, 2025, December 20, 2025, and February 26, 2026, respectively, in respect of these subscriptions; and

c. A third-party investor (the "Six Senses Investor") subscribed for A Class Shares in the amount of [redacted] on January 2, 2026.

15. The following subscriptions for UBO Class Shares in Six Senses have been received:

a. MPCM subscribed for UBO Class Shares in the amount of [redacted] August 12, 2025. Attached hereto as **Exhibit 16** is a true and correct copy of the Six Senses Subscription Agreement for MPCM's UBO Class Shares, dated July 31, 2025, in respect of this subscription.

b. MPCM subsequently redeemed [redacted] of its UBO Class Shares on April 1, 2026. The Manager of Six Senses allowed this redemption on an extraordinary basis as the aggregate of: (a) the Series Assets for each Series of B-LABNs then on issue; and (b) the value of the A Class Shares and UBO Class Shares then on issue, was at least equal to, and sufficiently liquid in respect of, the amount of the principal and coupons outstanding or to become outstanding in respect of the B-LABNs of each Series. MPCM then used the subscription monies from that redemption [redacted]

[redacted] to subscribe for UBO Class Shares in 9Mountains on April 1, 2026 to provide the capital backing for further B-LABNs to be issued by 9Mountains on that date. This one-time redemption was permitted in this instance because the Manager of Six Senses determined that the applicable conditions were satisfied at that time, whereas those conditions are not satisfied now, and a further redemption would impair the B-LABN holders' priority rights.

c. MSTN subscribed for UBO Class Shares in the amount of [redacted] on March 2, 2026.

16. On April 9, 2026, Six Senses invested a total of [redacted] in the Mosaic Fund in a single drawdown, drawn from the following sources:

[redacted]

*See* **Exhibit 11**. Of the [redacted] in issued Six Senses B-LABN principal, [redacted] was invested in the Mosaic Fund; the remaining [redacted] was not invested in the Mosaic Fund. This was in accordance with the investment strategy set out in the offering document that [redacted] of the B-LABN principal be so invested.

17. The capital structure of Six Senses mirrors that of 9Mountains. The B-LABNs rank in priority ahead of both the A Class Shares and the UBO Class Shares. Any shortfall in the return of capital is charged first to the A Class Shares, then to the UBO Class Shares. A Class Shares and UBO Class Shares may be redeemed only if the Board of the Manager determines that in respect of each B-LABN Series on issue, the B-LABN Series Assets at least equal the outstanding

B-LABN Series Principal Amount and the applicable outstanding B-LABN Series Interest Period Coupon Amount, and the assets available to pay those amounts are sufficiently liquid to pay them as and when they fall due. In addition, UBO Class Shares may not be redeemed during the one-year period following their date of issue. If both the A Class and UBO Class have been fully exhausted and a shortfall to the B-LABN holders remains, the shortfall is charged to Gipfel under the Surety Bond. *See* **Exhibit 12**.

18. Gipfel has issued the Surety Bond in favor of the B-LABN holders of both 9Mountains and Six Senses. The Surety Bond functions as a backstop, providing that, in the event the A Class and UBO Class capital within a sub-fund is insufficient to cover any shortfall in repayment of the B-LABNs, Gipfel will indemnify the B-LABN holders for the remaining deficiency. The Surety Bond is a material component of the investment structure and is presented to prospective B-LABN holders as a key feature of the investment. Attached hereto as **Exhibit 17** is a true and correct copy of the Gipfel Capitale Supplement, dated November 26, 2025. As of September 25, 2026, Gipfel held [redacted] in assets available to satisfy its obligations under the Surety Bond and has not invested any capital in the Mosaic Fund.

19. I have reviewed the Affirmation of Neal H. Levin, dated September 21, 2026 (the "Levin Affirmation"), submitted in support of Plaintiff's *ex parte* motion to modify the Temporary Restraining Order ("TRO") and for appointment of an escrow agent in this action, a true and correct copy of which is attached hereto as **Exhibit 18**. The Levin Affirmation contains several material inaccuracies that I wish to correct:

a. The Levin Affirmation states that the aggregate amount invested in the Mosaic Fund is approximately [redacted]. *See id.* ¶ 7. That figure does not

correspond to the capital invested in the Mosaic Fund by the Sub-Funds. Based on my personal knowledge and review of the fund records, the aggregate Mosaic Fund investment across 9Mountains and Six Senses is [redacted]. The approximately [redacted] referenced in the Levin Affirmation, *see id.* ¶ 4, concerns Manhattan-related equity capital contributed across the three First Degree Sub-Funds through May 2026; it does not establish that [redacted], or the equivalent amount, was invested in Mosaic. The fund records trace only [redacted] Mosaic Fund investment to Manhattan-associated share classes, with the balance traceable to B-LABN holders in 9Mountains and Six Senses and other third-party shares unrelated to Defendants. Those tracing figures identify the source of Sub-Fund capital, not ownership of the Mosaic Fund investment by any investor or Defendant.

b. The Levin Affirmation suggests that MPCM is the sole equity owner of the Sub-Funds or that the entirety of the capital invested in the Mosaic Fund is attributable to MPCM. This is incorrect. A third-party investor—the Six Senses Investor—holds A Class Shares in Six Senses, and seventy-four B-LABN holders in 9Mountains and six B-LABN holders in Six Senses hold or held notes (some have already been redeemed) that rank in priority ahead of any equity interest held by MPCM or MSTN. The Steering Committee is not MPCM or MSTN. To the extent it asserts rights through those entities, it stands no higher than the equity interests represented, which rank behind the B-LABNs.

c. Only [redacted] of the total [redacted] invested in the Mosaic Fund—representing approximately [redacted]—is traceable to Manhattan-associated share classes: [redacted] from MSTN's A Class Shares in 9Mountains, and [redacted] from the MPCM and MSTN A Class Shares identified in the Six Senses drawdown records. The remaining [redacted]—approximately [redacted]—is traceable to third-party B-LABN holders and the Six Senses Investor, who, to my knowledge and based on First Degree's investor onboarding records, have no connection to the Defendants in this action. These amounts are traceable through the Sub-Fund and Mosaic Fund drawdown records. The tracing of [redacted] to Manhattan share classes does not concede that that amount is property of MPCM, MSTN, Manhattan, or any Defendant; the entire [redacted] is property of the Sub-Funds.

d. The Levin Affirmation asserts there was an "agreement in principle" for the return of funds. *Id.* ¶ 12. Mr. Levin submitted to First Degree that it should so agree to avoid potentially being the subject of litigation to be instigated by him against First Degree, but First Degree at no stage gave its agreement in principle to that suggestion and was not a party to, and did not agree to, any such arrangement.

e. On September 14, 2026, counsel for the Steering Committee on behalf of the Parties to the JPCIA dated July 7, 2026 ("Plaintiff") sent me a proposed settlement and release agreement addressing the Mosaic and First Degree funds. I forwarded it to First Degree's counsel for review, and First Degree had not agreed to it or completed its review when Plaintiff pursued its second *ex parte* emergency motion, filed on September 21, 2026, resulting in the September 23, 2026 Order freezing

the Mosaic-Held Investor Funds and denying the requested escrow. The communications with Plaintiff therefore did not create an agreement binding First Degree, First Degree VCC, or either Sub-Fund. As I describe in further detail below, I communicated clearly and repeatedly that the capital structure of the Sub-Funds prevented any unilateral withdrawal of invested capital, and I had no authority to vary the terms of the fund arrangements.

20. MPCM and MSTN hold only A Class Shares or UBO Class Shares in the relevant Sub-Funds and have no ownership interest in the Sub-Funds' underlying assets. The interests in the Mosaic Fund, including the portion acquired with capital from MPCM's and MSTN's share subscriptions, are assets of the Sub-Funds held by First Degree VCC for their account. Each Sub-Fund's assets and liabilities are segregated from those of the other Sub-Funds.

21. The Manhattan equity was subscribed to support repayment of the B-LABNs and operates as first-loss capital within the applicable Sub-Funds. The A Class Shares and UBO Class Shares may be redeemed only in the limited circumstances described in paragraphs 12 and 17, *see supra*, which are not satisfied at present. Accordingly, any entitlement of MPCM or MSTN is limited to a contingent right to receive redemption proceeds subject to the priority of the B-LABN holders.

22. Accordingly, the entire [redacted] invested in the Mosaic Fund—including the [redacted] traceable to MPCM and MSTN's share subscriptions—is property of the Sub-Funds, not property of any Defendant, and is needed to satisfy obligations to the B-LABN holders. That [redacted] is traceable to Manhattan share subscriptions identifies the source of a portion of the Sub-Fund capital; it does not concede that that portion is Manhattan property.

23. First Degree, on behalf of First Degree VCC and the Sub-Funds, undertakes that, pending further order of this Court, it will not redeem, transfer, or make any distribution or payment on the shares held by MPCM or MSTN, or on any redemption proceeds attributable to those shares, without prior notice to Plaintiff and leave of Court.

24. To identify only the portion directly contributed by third parties, and without conceding that the balance is property of MPCM, MSTN, Manhattan, or any Defendant, the capital invested in the Mosaic Fund that is not attributable to MPCM or MSTN (the "Non-Manhattan Investment Monies") is calculated as follows:

a. 9Mountains: [redacted], consisting entirely of B-LABN holder capital;

b. Six Senses: [redacted], consisting of [redacted] from B-LABN holders, and [redacted] from the Six Senses Investor; and

c. Total Non-Manhattan Investment Monies: [redacted], subject to fund expense charges by Mosaic, which may discount from the amount to be returned.

25. The continued maintenance of the TRO and any preliminary injunction freezing the Mosaic-held funds threatens imminent harm to the B-LABN holders and the Six Senses Investor that cannot be remedied by a later payment of money. Approximately [redacted] of noteholder monies invested in the Mosaic Fund are scheduled to be repaid or redeemed over the next six months, beginning in the first week of October 2026. The Mosaic Fund freeze prevents the funds from using those monies to meet those contractual obligations and will cause an imminent default if the TRO is not modified.

26. Freezing the portion acquired with MPCM and MSTN equity equally harms the B-LABN holders because that equity is the first-loss capital supporting repayment of the B-LABN notes.

27. A default would also cause serious reputational harm to First Degree as a MAS-regulated fund manager, in addition to harming the affected investors. The September 25, 2026 Steering Committee Overview identifies substantial note repayment obligations in late 2026 and early 2027 and shows the material effect of the Mosaic Fund proceeds on the Sub-Funds' ability to meet them. Specifically:

a. The 9Mountains B-LABNs have maturity dates falling between July 1, 2026 and November 14, 2026. As of the date of this declaration, fifty-seven B-LABNs with aggregate principal of approximately [redacted] and aggregate coupons outstanding of approximately [redacted] have matured (totaling approximately [redacted]), of which approximately [redacted] has been repaid and approximately [redacted] remains unpaid, and the remaining B-LABNs, with aggregate principal of approximately [redacted] and aggregate coupons outstanding of approximately [redacted] [redacted] (totaling approximately [redacted], will mature by November 14, 2026. 9Mountains currently holds only approximately [redacted] in cash and liquid assets. Without the return of the capital invested in the Mosaic Fund, 9Mountains will be unable to meet its contractual obligations to repay the remaining B-LABN holders upon maturity, and the holders of matured notes that remain unpaid, resulting in a default on those obligations;

b. The Six Senses B-LABNs have maturity dates falling between November 14, 2026 and March 31, 2027. As of the date of this declaration, approximately [redacted] in principal and approximately [redacted] in coupon payments (for an aggregate of approximately [redacted]) will become due on these B-LABNs. Six Senses

currently holds approximately [redacted] in cash and liquid assets. Unless the investment in the Mosaic Fund is returned in a timely manner, Six Senses will be at risk of not being able to meet its obligations to its six B-LABN holders upon maturity;

c. In the event that the A Class and UBO Class capital within the Sub-Funds is insufficient to cover any shortfall, Gipfel's obligations under the Surety Bond will be triggered, which would require Gipfel to deploy or raise assets within Gipfel for the benefit of the affected noteholders; and

d. A payment default on the B-LABNs would constitute an event of default under their terms, First Degree would likely be required to suspend 9Mountains and make a suspension report to the MAS, and this could result in the winding up of the affected Sub-Fund and result in significant damage to First Degree's standing with MAS.

28. I have had multiple communications with Mr. Levin, counsel for Plaintiff, regarding the Mosaic Fund investment and the fund structures. I summarize those communications as follows:

a. On August 21, 2026, I had a telephone call with Mr. Levin, in which the Mosaic Fund investment and the Sub-Fund structures were first discussed. This was my first communication with Mr. Levin;

b. On September 5, 2026, I had a further telephone call with Mr. Levin, in which I explained in detail the capital structures of 9Mountains and Six Senses, including the B-LABN priority waterfall, and the fact that B-LABN holders' capital ranked ahead of any equity capital MPCM or MSTN contributed;

c. On September 14, 2026, I had two telephone calls with Mr. Levin. In both calls, I reiterated that the capital structure of the Sub-Funds prevented any unilateral withdrawal of invested capital, that I had no authority as CEO of First Degree to vary the terms of the fund arrangements without the consent of the relevant stakeholders, and that any attempt to do so would be a breach of my fiduciary obligations to the B-LABN holders and other investors; and

d. At no point in any of these communications did Mr. Levin tell me, before or during the September 5 and September 14 calls, that Plaintiff intended to seek or had obtained relief restraining assets held for the account of the Sub-Funds. The first copy of the September 3, 2026 TRO I received was emailed by Mr. Levin on September 14, 2026 at approximately 9:20 p.m., after the September 14 communications described above.

29. I have engaged constructively and in good faith with Plaintiff and provided transparency regarding the fund structures, the capital invested in the Mosaic Fund, and the priority waterfall applicable to each Sub-Fund. First Degree has, at all times, sought to cooperate with Plaintiff to the extent consistent with its legal and fiduciary obligations.

30. First Degree, First Degree VCC, and the Sub-Funds are not owned or controlled by, and (other than MPCM and MSTN's holdings of A Class Shares and UBO Class Shares in the Sub-Funds) do not share any director, officer, or shareholder with, any Defendant in this action, the Mosaic Fund, or the Mosaic Fund's general partner or manager, and I have no personal financial interest in any of them. To my knowledge, the Amended Complaint does not allege that First Degree, First Degree VCC, or any Sub-Fund engaged in any wrongdoing.

31. The Non-Manhattan Investment Monies were paid directly into the bank accounts of 9Mountains and Six Senses by the B-LABN holders and the Six Senses Investor themselves. To the best of my knowledge and based upon my examination of the relevant bank records, none of those monies was contributed, advanced, or financed by MSTN, MPCM, or any other Defendant. MPCM and MSTN represented to First Degree in their subscription agreements that they were the beneficial owners of the funds subscribed. They did not indicate that the funds were derived from MSTN's private note program.

32. The interests in the Mosaic Fund, including interests acquired with capital from MPCM and MSTN's share subscriptions, are held by First Degree VCC for the account of 9Mountains and Six Senses. First Degree decided to invest in the Mosaic Fund on behalf of those Sub-Funds after conducting due diligence on the structure, constitutional and offering documents of the Mosaic Fund and on Mr. Samuel Simpson, the principal of the general partner of the Mosaic Fund. Neither First Degree nor any affiliate received any fee, commission, or other benefit from the Mosaic Fund or its manager in connection with the investment, and no distribution or return of capital has been received from the Mosaic Fund.

33. Neither First Degree, First Degree VCC, nor any of the Sub-Funds had any involvement in the issuance, marketing, or sale of the MSTN Notes that are the subject of the allegations in this action. Neither Gipfel nor any other Sub-Fund issued any guarantee, surety, insurance, or other credit support for the MSTN Notes, and the Surety Bond runs solely in favor of the B-LABN holders of 9Mountains and Six Senses. First Degree had no knowledge of the fraud alleged in this action when the subscriptions from MSTN and MPCM were received into the Sub-Funds or when capital was invested in the Mosaic Fund. The last drawdown to the Mosaic Fund occurred on May 18, 2026, before First Degree's June 3, 2026 letter.

34. First Degree first learned of the unauthorized use of Gipfel's name in early June 2026. Upon learning of the unauthorized use of Gipfel's name in connection with marketing materials distributed by MSTN and/or MPCM, First Degree issued a cease-and-desist letter to MSTN, dated June 3, 2026, and posted a public warning on its website on June 17, 2026, stating that First Degree and its funds had no involvement in the MSTN Notes and did not underwrite their repayment. Attached hereto as **Exhibit 19** is a true and correct copy of the June 3, 2026 cease-and-desist letter, and attached hereto as **Exhibit 20** is a true and correct copy of the June 17, 2026 public warning.

35. The original Verified Complaint was filed on September 2, 2026. On September 3, 2026, the Court entered an *ex parte* TRO and pre-judgment order of attachment under New York Civil Practice Law and Rules § 6210 and Federal Rule of Civil Procedure 64, freezing and prohibiting transfers from the accounts identified in Schedule A. On September 17, 2026, the Court entered an order at ECF No. 38 extending the TRO for fourteen days to maintain the status quo and adding newly discovered accounts. On September 21, 2026, Plaintiff filed a second *ex parte* emergency motion at ECF No. 47 seeking, among other relief, appointment of an escrow agent to receive [redacted]. On September 23, 2026, the Court entered an order at ECF No. 56 freezing the [redacted] in Mosaic-Held Investor Funds, denying the escrow request, providing that the TRO would expire on October 1, 2026, and warning that the TRO would not be extended if Plaintiff failed to serve all Defendants (the "September 23 Order"). Plaintiff's pending preliminary-injunction motion at ECF No. 57 seeks continued attachment and continuation of the freeze. The Amended Complaint was filed on September 29, 2026. The September 23 Order describes the Mosaic Fund as an exempted limited partnership registered in the Cayman Islands, and states: "to include the Mosaic-Held Investor Funds—*i.e.*, the [redacted] in funds that

is currently in the possession of the Mosaic Fund but has not yet been invested by the Mosaic Fund." ECF No. 56 at 3.

36. To my knowledge, none of First Degree, First Degree VCC, or any of the Sub-Funds received notice of the application before the TRO was entered. Neither First Degree nor any of the Sub-Funds was named as a party to this action at the time the TRO was entered, and none was afforded an opportunity to be heard before the TRO was entered. The TRO restrains assets in which First Degree VCC, the Sub-Funds, the B-LABN holders, and the Six Senses Investor hold direct or indirect interests.

37. First Degree, First Degree VCC, and the Sub-Funds have not taken any action contrary to the TRO and are in compliance with that order.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 30, 2026, in Singapore.

*<u>/s/ Anthony John Morgan</u>*
Anthony John Morgan