Docusign Envelope ID: 047EE6E0-C48A-4834-A810-2A239B64CCA7

MANHATTAN
5T NOTES

MANHATTAN
5OCEANS PARTNERS
PLATFORM

ELITE | SERIES
GOLD

# Secured Notes Subscription Documents

*** Please select your investor profile type:**

(X) Individual ( ) Joint Accounts ( ) Trusts and Other Entities

MANHATTAN ST NOTES LLC

# ELITE GOLD Series Secured Notes
## USD | GBP | EUR | AED | SGD | CAD | AUD
## Subscription Instructions

**A. Completion of Subscription Documents**

- ☐ **Subscription Agreement.** Read carefully pages 1 to 9.
- ☐ **Secured Note.** Sign and return the counterpart signature page to the Secured Note.

**B. Subscription Amount; Payment** Subscriptions must be made in a minimum amount of **USD | GBP | EUR | AED | SGD | CAD | AUD 50,000.00 and thereafter increments of 10,000.00.** Payment of the Subscription Amount is due with the execution and submission of this Agreement. Wire transfers of the USD | GBP | EUR | AED | SGD | CAD | AUD Subscription Amount should be sent to the following accounts specific to the subscribed currency as listed on **Schedule A – Bank Details:**

> **Please provide a copy to the Manager of MT103 receipt via your dedicated Investor Display Account or to investments@manhattan5op.com once funds have been wired.**

**C. Delivery of Subscription Agreement** The executed subscription documents should be delivered to Manhattan ST Notes, LLC (Manhattan 5 Oceans Partners Platform) via its Investor Display platform or as otherwise instructed by the Manager.

If the Subscription is accepted, a copy of the Acceptance signed by the Manager will be returned to you.

**D. Questions** For additional information concerning subscriptions and subscription procedures, prospective investors should contact the Manager at investments@manhattan5op.com or contact your appointed authorized advisor.

**E. Additional Documentation/Information** You may be required to deliver additional documentation and other information in connection with your subscription application in order to ensure, among other things, compliance with applicable anti-money laundering laws and regulations.

Docusign Envelope ID: 047EE6E0-C48A-4834-A810-2A239B64CCA7



# ELITE GOLD Series
Subscription Agreement

## PLEASE READ CAREFULLY BEFORE SIGNING

This Subscription Agreement (this **"Agreement"**) is made and entered into by and between the undersigned (the **"Investor"**) and ELITE GOLD Series of Manhattan ST Notes, LLC, a Delaware limited liability company (the **"Company"**).

Subject to the terms and conditions of this Agreement, the Terms of Use in effect as of the date of this Agreement, and the Non-Disclosure Agreement in effect as of the date of this Agreement, the Investor wishes to subscribe for and purchase Secured Notes issued by the Company (the **"Secured Notes"**), made available to Investor by the Company through the Platform (as defined below).

The offering of Secured Notes by the Company (the **"Offering"**) is described in the Confidential Private Investment Memorandum Deck dated February 7, 2025 (the **"Memorandum Deck"**) that is available to the Investor through the Investor Display, https://www.manhattan5op.com, an online investment platform (the **"Platform"**).

The Secured Notes are being issued to provide pre-funding for the acquisition of the Underlying Participations in high-quantum litigation assertion programs (as described and defined in the Memorandum Deck. The Secured Notes are the secured obligations of the Company.

NOW THEREFORE, in order to implement the foregoing and in consideration of the mutual representations, warranties, covenants and agreements contained herein and by setting forth their signatures below, on the signature date listed below, the parties hereto agree as follows:

## 1. Subscription for and Purchase of Secured Notes

A. Subscription for Secured Notes. Subject to the express terms and conditions of this Agreement, the Investor hereby irrevocably subscribes (the "**Subscription**") for Secured Notes in the aggregate principal amount shown below the Investor's signature to this Agreement (the "**Subscription Amount**"). If the Subscription is not accepted, or, if only a portion of the Subscription Amount is accepted, the unaccepted Subscription funds will be returned to the Investor without interest. The Investor hereby acknowledges that the Manager reserves the right, in its sole discretion, to (i) accept all or any part of a Subscription Amount from any Investor, (ii) reject any or all Subscriptions received for any reason and irrespective of the order in which received, (iii) request additional information to verify an Investor's suitability for the Offering, and (iv) terminate the Offering at any time without notice. **The Investor may not cancel, terminate or revoke the Subscription or this Agreement.** The Subscription and this Agreement, in the case of an individual, shall survive such individual's death or disability and shall be binding upon the Investor, the Investor's heirs, trustees, beneficiaries, executors, personal or legal administrators or representatives, successors, transferees and assigns.

B. Acceptance of Subscription. If all or a portion of the Subscription is accepted by the Company, the Investor agrees to comply fully with the terms of this Agreement, the Secured Note, Memorandum Deck and all other applicable documents or instruments of the Company or the Manager. The Investor further agrees to execute any other necessary documents or instruments in connection with the Subscription and the Investor's purchase of the Secured Notes.

C. Payment of Subscription Amount. The Investor understands and agrees that payment of the Subscription Amount is due with the execution and submission of this Agreement.

D. Return of Funds. In the event that the purchase of Secured Notes is rejected or the Offering is terminated, the Company shall refund to the Investor any payment made by the Investor to the Company with respect to the rejected Secured Note without interest and without deduction, and all of the obligations of Investor hereunder shall remain in full force and effect except for those obligations with respect to the rejected Secured Note, which shall terminate.

## 2. Terms of the Secured Notes

The Investor acknowledges and agrees:

A. The Secured Notes shall have the terms and conditions described in the Memorandum Deck, which have been made available to Investor for review on the Platform.

B. The Secured Notes are an obligation of the Company.

C. Investor has no right to, and shall not, make any attempt, directly or through any third party, to take collection action with respect to the Underlying Participations or any payments thereupon.

## 3. Investor Representations

The Investor represents and warrants to the Company the following:

A. The Investor has received and reviewed the terms of the Offering as provided in the Memorandum Deck. The information that the Investor has furnished herein and on the Platform is correct and complete as of the date of this Agreement and will be correct and complete on the date, if any, that the Company accepts the Subscription. Further, the Investor shall immediately notify the Company of any change in any statement made herein prior to the Investor's receipt of the Company's acceptance of the Subscription. The representations and warranties made by the Investor may be fully relied upon by the Company and any other investigating party relying on them.

B. The information that the Investor has furnished or will furnish in connection with the purchase of Secured Notes will be correct and complete as of the date, if any, that the Company issues Secured Notes. Further, the Investor shall immediately notify the Company of any change in any statement made in connection with the purchase of Secured Notes prior to the Investor's receipt of any issued Secured Note.

C. The Investor has the requisite power and authority to deliver this Agreement, perform his, her or its obligations set forth herein, and consummate the transactions contemplated hereby. The Investor has duly executed and delivered this Agreement and has obtained the necessary authorization to execute and deliver this Agreement and to perform his or her obligations herein and to consummate the transactions contemplated hereby. This Agreement, assuming the due execution and delivery hereof by the Company, is a legal, valid and binding obligation of the Investor enforceable against the Investor in accordance with its terms.

D. The Investor's true and correct full legal name, address of residence, phone number, email address, and other contact information are accurately provided to the Company through the Platform. The Investor is currently a bona fide resident of the state or jurisdiction set forth in the information provided to the Company. If an individual, the Investor is eighteen years of age or older, competent to enter into a contractual obligation.

E. The Investor is subscribing for the purchase of Secured Notes solely for the Investor's own account, for investment purposes only, and not with a view towards or in connection with resale, distribution, subdivision or fractionalization thereof.

F. The Investor has received all information that it considers necessary or appropriate for deciding whether to purchase the Secured Notes. The Investor, either alone or with its financial advisor(s), has such knowledge and experience in business and financial matters as will enable the Investor to utilize the information which the Investor has received in connection with the Company and its business to evaluate the merits and risks of an investment to make an informed investment decision. The Investor has had an opportunity to ask questions of the Company or anyone acting on its behalf and to receive answers concerning the terms of this Agreement and the Secured Notes, as well as about the Company and its business generally, and to obtain any additional information that the Company possesses or can acquire without unreasonable effort or expense, that is necessary to verify the accuracy of the information contained in this Agreement. Further, all such questions have been or will be answered to the full satisfaction of the Investor. The Investor acknowledges that in deciding to invest in the Secured Notes, the Investor has relied solely upon the information in the Memorandum Deck (and any other materials that may be specifically authorized by the Manager) and nothing else. Investor is not relying on the Company, the Manager, their respective affiliates, managers, officers, directors, principals, partners, members, equity holders, employees, agents, or other applicable representatives, or any other person or entity other than Investor's own advisors with respect to the legal, tax, and other economic considerations involved in this investment.

G. The Investor understands and acknowledges that the Secured Notes have not been registered under the Securities Act of 1933, as amended (the "**Act**") or any state securities law and are being issued in reliance upon one or more exemptions from registration contained in such laws (including the exemption afforded by Section 4(a)(2) of the Act) and that the Company's reliance upon such exemptions is based in part on the representations and agreements made by the Investor herein. In addition, the Investor understands and acknowledges that the offering of the Secured Notes has not been approved, disapproved, or passed on by any federal or state agency or commission or by any exchange or other self-regulatory organization. The Investor has a substantive and pre-existing relationship with the Manager, its members, or its principals, employees, agents or affiliates.

H. The Investor understands and acknowledges that there are substantial restrictions on the transferability of Secured Notes and that there is no public market for the Secured Notes, and none is expected to develop in the near future. Consequently, the Investor understands that it must bear the economic risk of this investment for an indefinite period of time, and that it may not be possible for the Investor to liquidate readily any investment in the Secured Notes, if at all.

I. The Investor understands and agrees that the Company is intended to be exempt from registration, and will not register, as an investment company under the U.S. Investment Company Act of 1940, as amended (the "Investment Company Act"), in reliance on Section 3(c)(l) of the Investment Company Act. and (ii) the Investor will not be afforded the protections provided to investors in registered investment companies under the Investment Company Act. Accordingly, the Investor represents and warrants that (a) it is holding the Secured Notes for its own account and not for the account of any other person, and (b) if the Investor is an entity, (i) it was not formed for the purpose of investing in the Secured Notes or to permit the Company to avoid

Docusign Envelope ID: 047EE6E0-C48A-4834-A810-2A239B64CCA7

classification as an investment company under the Investment Company Act, (ii) the holders of beneficial interests in the Investor are not able to decide individually whether to participate, or the extent of their participation in the Investor's investment in the Secured Notes, and (iii) it does not invest more than 40% of its total assets in any single entity, including the Company, which is excluded from the definition of an investment company solely by reason of Section 3(c)(l) of the Investment Company Act. The Investor understands that the Company has not been registered as an investment adviser under the Investment Advisers Act.

J. The Investor understands that the Secured Notes may not be resold unless subsequently registered under the Act or unless an exemption from registration is available, and that the Investor does not have the right to require such registration. The Investor further understands that Rule 144 under the Act will not be available to permit resales of the Secured Notes and that there is and will be no public market for the Secured Notes.

K. The Investor confirms that the Investor has been advised to consult with the Investor's independent attorney regarding legal matters concerning the Company and to consult with independent tax advisers regarding the tax consequences of investing through the Company.

L. The Investor is able to bear the economic risk of an investment in the Secured Notes and, without limiting the generality of the foregoing, is able to hold this investment for an indefinite period of time. The Investor has adequate means to provide for the Investor's current needs and personal contingencies and has a sufficient net worth to sustain the loss of the Investor's entire investment in Secured Notes.

M. The Investor certifies that the Investor is an "accredited investor" as that term is defined in Rule 501(a) under Regulation D promulgated under the Act and has correctly identified its accreditation status on the Questionnaire to Prospective Investors attached hereto as required by Rule 506(c) of the Act. The Investor agrees to (i) assist the Company in verifying the facts necessary to establish that the Investor qualifies as an "accredited investor" and (ii) provide any additional documentation that the Company or any third party agent may request to verify that the Investor qualifies as an "accredited investor", or as may be required by the securities administrators or regulators of any state, to confirm that the Investor meets any applicable minimum financial suitability standards and has satisfied any applicable maximum investment limits. The Investor understands that the Company must take reasonable steps to verify the Investor's "accredited investor" status. The Investor has experience making investments similar to the Secured Notes.

N. The Investor represents and warrants that it is not involved in any money laundering scheme and that acceptance by the Company of this application to subscribe for Secured Notes, together with acceptance of the appropriate remittance, will not breach any applicable rules and regulations designed to avoid money laundering, including the provisions of the Bank Secrecy Act of 1970, as amended. Specifically, Investor represents and warrants that all evidence of identity provided is genuine and all related information furnished and to be furnished is accurate. The Investor represents and warrants that the funds being used to make this investment in the Secured Notes are not derived from any unlawful or criminal activities, and that the Investor has accurately and fully answered all questions directed to the Investor, either orally or in writing, with respect to the source of funds being used to make this investment in the Secured Notes.

# 4. Representations and Warranties of the Company

The Company hereby represents and warrants to the Investor as follows:

A. The Company is a Delaware limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware, having full power and authority to own its properties and carry on its business as conducted.

B. The Company has the requisite power and authority to deliver this Agreement, perform its obligations herein and consummate the transactions contemplated hereby.

C. The Secured Notes to be issued to the Investor pursuant to this Agreement, when issued and delivered in accordance with the terms of this Agreement, will be duly authorized and validly issued by the Company.

# 5. Subsequent Sales or Transfers

A. The Investor may not resell or otherwise transfer any Secured Notes except with the express written consent of the Company. Secured Notes may not be sold or otherwise transferred without registration under the Act or pursuant to an exemption therefrom.

B. No sale or transfer shall be effective unless the buyer or transferee has executed and delivered to the Company all documents required by the Company for investing in the Secured Notes and paid the transfer fee to the Company.

# 6. Electronic Service

A. By entering into this Agreement, the Investor consents to receive electronically all documents, communications, notices, contracts, and agreements arising from or relating in any way to the Investor's or the Company's rights, obligations or services under this Agreement.

B. All notices and communications to be given or otherwise made to the Investor by the Company shall be deemed to be sufficient if sent by Investor Display or DocuSign to such address as set forth for the Investor at the records of the Company. All notices and communications to be given or otherwise made to the Company by the Investor shall be deemed to be sufficient if sent by electronic mail to investments@manhattan5op.com).

# 7. Indemnity

The Investor hereby indemnifies and holds harmless the Company and their respective officers, directors, managers, stockholders, partners, members, agents, counsel, servants, employees, affiliates, parent companies, subsidiaries, heirs, personal and legal representatives and administrators, successors and assigns from, of and against any and all losses, costs, claims, expenses and damages of every kind, known or unknown, contingent or otherwise (including, but not limited to, reasonable attorneys' fees and court costs incurred), or liability due, which any one of them may incur by reason of (i) failure of the Investor to fulfill any of the terms or conditions of this Agreement, (ii) any breach of any representation or warranty of the Investor, whether contained in this Agreement or elsewhere, or (iii) Investor's wrongful acts, omissions and representations (and those of the Investor's employees, agents or representatives). Investor's obligation to indemnify the Company shall survive termination of this Agreement, regardless of the reason for termination.

## 8. Confidentiality

The Investor acknowledges that the Memorandum Deck contains confidential and non-public information and agrees that all such information shall be kept in confidence by the Investor and not disclosed to any third party for any reason, except (i) as required by law or (ii) on a need-to-know basis if such third party is acting as a legal or financial adviser to the Investor.

## 9. No Advisory Relationship

The Investor hereby acknowledges and agrees that the purchase and sale of any Secured Notes pursuant to this Agreement is an arms-length transaction between the Investor and the Company. In connection with the purchase and sale of the Secured Notes, the Investor hereby acknowledges and agrees that: (i) the Company is not acting as the Investor's agent or fiduciary; (ii) the Company does not assume any advisory or fiduciary responsibility in the Investor's favor in connection with the Secured Notes or the corresponding project investments; and (iii) the Company has not provided the Investor with any legal, accounting, regulatory or tax advice with respect to the Secured Notes, and the Investor has consulted its own respective legal, accounting, regulatory and tax advisors to the extent that the Investor has deemed appropriate.

## 10. The Company's Right to Modify Terms

The Company has the right to change any term or provision of the Memorandum Deck, the form of Secured Note, or the Platform as long as it is not to the detriment of the Investor. The Investor authorizes the Company to correct obvious clerical errors appearing in information that the Investor provides to the Company, without notice, although the Company does not undertake any obligation to identify or correct such errors.

## 11. Termination

The Company may, in its sole discretion, with or without cause, terminate this Agreement by giving the Investor written notice. In addition, upon the reasonable determination by the Company that the Investor committed fraud or made a material misrepresentation in connection with a commitment to purchase any Secured Notes, performed any prohibited activity, or otherwise failed to abide by the terms of this Agreement or other applicable terms and conditions, the Company may, in its sole discretion, immediately and without notice, take one or more of the following actions: (i) terminate or suspend the Investor's right to purchase Secured Notes; (ii) terminate this Agreement and the Investor's relationship with the Company, and (iii) repurchase any Secured Notes that have been issued to the Investor. Upon termination of this Agreement, any commitments that the Investor has made to purchase Secured Notes shall be terminated.

## 12. Arbitration

A. Each of the Investor and the Company may, at its sole election, require that the sole and exclusive forum and remedy for resolution of a Claim (as defined below) be final and binding arbitration pursuant to Section 12 (this "**Arbitration Provision**"). The arbitration shall be conducted in the State of New York, United States of America. As used in this Arbitration Provision, "**Claim**" shall include any past, present, or future claim, dispute, or controversy involving the Investor (or persons claiming through or connected with the Investor), on the one hand, and the Company (or persons claiming through or connected with the Company), on the other hand, relating to or arising out of

this Agreement, any Secured Note, the Platform, and/or the activities or relationships that involve, lead to, or result from any of the foregoing, including (except to the extent provided otherwise in the last sentence of Subsection (F) below) the validity or enforceability of this Arbitration Provision, any part thereof, or the entire Agreement. Claims are subject to arbitration regardless of whether they arise from contract; tort (intentional or otherwise); a constitution, statute, common law, or principles of equity; or otherwise. Claims include (without limitation) matters arising as initial claims, counterclaims, crossclaims, third- party claims, or otherwise. The scope of this Arbitration Provision is to be given the broadest possible interpretation that is enforceable.

B. The party initiating arbitration shall do so with the American Arbitration Association or JAMS. The arbitration shall be conducted according to the rules and policies of the administrator selected, except to the extent the rules conflict with this Arbitration Provision or any countervailing law. In the case of a conflict between the rules and policies of the administrator and this Arbitration Provision, this Arbitration Provision shall control, subject to countervailing law, unless all parties to the arbitration consent to have the rules and policies of the administrator apply.

C. If the Company elects arbitration, the Company shall pay the entire administrators filing costs and administrative fees (other than hearing fees). If the Investor elects arbitration, filing costs and administrative fees (other than hearing fees) shall be paid in accordance with the rules of the administrator selected, or in accordance with countervailing law if contrary to the administrator's rules. The Company shall pay the administrator's hearing fees for one full day of arbitration hearings. Fees for hearings that exceed one day will be paid by the party requesting the hearing, unless the administrator's rules or applicable law require otherwise. Each party shall bear the expense of its own attorney's fees, except as otherwise provided by law. If a statute gives the Investor the right to recover any of these fees, these statutory rights shall apply in the arbitration notwithstanding anything to the contrary herein.

D. Within thirty (30) days of a final award by the arbitrator, a party may appeal the award for reconsideration by a three-arbitrator panel selected according to the rules of the arbitrator administrator. In the event of such an appeal, an opposing party may cross-appeal within thirty (30) days after notice of the appeal. The panel will reconsider de novo all aspects of the initial award that are appealed. Costs and conduct of any appeal shall be governed by this Arbitration Provision and the administrator's rules, in the same way as the initial arbitration proceeding. Any award by the individual arbitrator that is not subject to appeal, and any panel award on appeal, shall be final and binding, except for any appeal right under the Federal Arbitration Act (the **"FAA"**), and may be entered as a judgment in any court of competent jurisdiction.

E. The Company agrees not to invoke the right to arbitrate an individual Claim that the Investor may bring in Small Claims Court or an equivalent court, if any, so long as the Claim is pending only in that court. EXCEPT AS EXPRESSLY PROVIDED IN THIS AGREEMENT, NO ARBITRATION SHALL PROCEED ON A CLASS, REPRESENTATIVE, OR COLLECTIVE BASIS (INCLUDING AS PRIVATE ATTORNEY GENERAL ON BEHALF OF OTHERS), EVEN IF THE CLAIM OR CLAIMS THAT ARE THE SUBJECT OF THE ARBITRATION HAD PREVIOUSLY BEEN ASSERTED (OR COULD HAVE BEEN ASSERTED) IN A COURT AS CLASS REPRESENTATIVE, OR COLLECTIVE ACTIONS IN A COURT.

F. Unless otherwise provided in this Agreement or consented to in writing by all parties to the arbitration, no party to the arbitration may join, consolidate, or otherwise bring claims for or on behalf of two or more individuals or unrelated corporate entities in the same arbitration unless those persons are parties to a single transaction. Unless consented to in writing by all parties to the arbitration, an award in arbitration shall determine the rights and obligations of the named parties only, and only with respect to the claims in arbitration, and shall not (i) determine the rights, obligations, or Secured Notes of anyone other than a named party, or resolve any Claim of anyone other than a named party, or (ii) make an award for the benefit of, or against, anyone other than a named party. No administrator or arbitrator shall have the power or authority to waive, modify, or fail to enforce this Subsection (F), and any attempt to do so, whether by rule, policy, arbitration decision or otherwise, shall be invalid and unenforceable. Any challenge to the validity of this Subsection (F) shall be determined exclusively by a court and not by the administrator or any arbitrator.

G. This Arbitration Provision shall survive (i) suspension, termination, revocation, closure, or amendments to this Agreement and the relationship of the parties; (ii) the bankruptcy or insolvency of any party hereto or other party; and (iii) any transfer of any loan or Secured Notes or any amounts owed on such loans or Secured Notes to any other party. If any portion of this Arbitration Provision other than Subsection (F) is deemed invalid or unenforceable, the remaining portions of this Arbitration Provision shall nevertheless remain valid and in force. If arbitration is brought on a class, representative, or collective basis, and the limitations on such proceedings in Subsection (F) are finally adjudicated pursuant to the last sentence of Subsection (F) to be unenforceable, then no arbitration shall be had. In no event shall any invalidation be deemed to authorize an arbitrator to determine Claims or make awards beyond those authorized in this Arbitration Provision.

**THE PARTIES IRREVOCABLY WAIVE ANY AND ALL RIGHTS THEY MAY HAVE TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR CLAIM OF ANY NATURE RELATING TO THIS AGREEMENT, THE SECURED NOTES, ANY DOCUMENTS EXECUTED IN CONNECTION WITH THE SECURED NOTE OR ANY TRANSACTION CONTEMPLATED IN ANY OF SUCH DOCUMENTS. THE PARTIES ACKNOWLEDGE THAT THE FOREGOING WAIVER IS KNOWING AND VOLUNTARY.**

## 13. Miscellaneous Provisions

A. This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware (without regard to the conflicts of laws principles thereof).

B. This Agreement, or the rights, obligations or Secured Notes of the Investor hereunder, may not be assigned, transferred or delegated without the prior written consent of the Company. Any such assignment, transfer or delegation in violation of this Section shall be null and void.

C. The parties agree to execute and deliver such further documents and information as may be reasonably required in order to effectuate the purposes of this Agreement.

D. Investor and the Company agree that the Secured Notes are intended to be indebtedness of the Company for U.S. federal income tax purposes. Investor agrees that Investor will not take any position inconsistent with such treatment of the Secured Notes for tax, accounting, or other purposes, unless required by applicable law.

E. Any term of this Agreement may be amended and the observance of any term of this Agreement may be waived (either generally or in a particular instance and either retroactively or prospectively), only with the written consent of each of the parties hereto.

F. If one or more provisions of this Agreement are held to be unenforceable under applicable law, rule or regulation, such provision shall be excluded from this Agreement and the balance of the Agreement shall be interpreted as if such provision were so excluded and shall be enforceable in accordance with its terms.

G. In the event that either party hereto shall commence any suit, action or other proceeding to interpret this Agreement, or determine to enforce any right or obligation created hereby, then such party, if it prevails in such action, shall recover its reasonable costs and expenses incurred in connection therewith, including, but not limited to, reasonable attorney's fees and expenses and costs of appeal, if any.

H. This Agreement and the documents referred to herein (including, without limitation, the Secured Note) constitute the entire agreement among the parties and shall constitute the sole documents setting forth terms and conditions of the Investor's contractual relationship with the Company with regard to the matters set forth herein. This Agreement supersedes any and all prior or contemporaneous communications, whether oral, written or electronic, between the parties. The Investor acknowledges and agrees that this Agreement shall govern all investments on the Platform unless and until superseded by an amended or restated agreement expressly replacing this Agreement.

I. In the event that there is any conflict of interpretation of terms among parties to the Memorandum Deck, the Secured Note shall control.

J. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. Counterparts may be delivered via facsimile, electronic mail (including PDF or any electronic signature complying with the U.S. federal ESIGN Act of 2000, e.g., www.docusign.com) or other transmission method, and any counterpart so delivered will be deemed to have been duly and validly delivered and be valid and effective for all purposes.

K. The titles and subtitles used in this Agreement are used for convenience only and are not to be considered in construing or interpreting this Agreement. The singular number, as used herein, shall be deemed to include the plural number whenever the context so requires.

L. Except as otherwise set forth herein, the parties acknowledge that there are no third-party beneficiaries of this Agreement, other than any affiliates of the Company that may be involved in the issuance or servicing of Secured Notes on the Platform, which the parties expressly agree shall be third party beneficiaries hereof.

*[Signature page follows.]*

Docusign Envelope ID: 047EE6E0-C48A-4834-A810-2A239B64CCA7



# Signature Page for **Individuals**

IN WITNESS WHEREOF, the undersigned Investor has executed the Subscription Agreement to purchase Secured Notes in the amount shown below the Investor's signature below on the date set forth below.

David Simpson

Print Name

[redacted]

Identification No. (passport/driver's license/ national identity card)

12/21/1974

Date of Birth

Signed by:
David Simpson
3795FDAF26CF49F...

Signature

[redacted] 19/F, Block 16
[redacted] Centre
51 [redacted]
[redacted]
Hong Kong

Residential Address

10000, Hong Kong

Mailing Address (if different)

[redacted]

Email Address

May 20, 2025

Date

**Subscription Amount** USD 20,000.00

***(minimum 50,000 and thereafter increments of 10,000)***

Docusign Envelope ID: 047EE6E0-C48A-4834-A810-2A239B64CCA7



# Signature Page for **Joint Accounts**

IN WITNESS WHEREOF, the undersigned Investors have executed the Subscription Agreement to purchase Secured Notes in the amount shown below the Investors' signature below on the date set forth below.

**#1 Print Name**

Identification No. (passport/driver's license/ national identity card)

Date of Birth

Signature

Residential Address

Mailing Address (if different)

Email Address

Date

**#2 Print Name**

Identification No. (passport/driver's license/ national identity card)

Date of Birth

Signature

Residential Address

Mailing Address (if different)

Email Address

Date

**Subscription Amount** ______________________________

***(minimum 50,000 and thereafter increments of 10,000)***

# Signature Page For **(I) Revocable Trusts; (II) Other Entities Where The Respective Equity Owners or Trust Grantors (As Applicable) are Accredited Investors; and (III) All Other Entities**

IN WITNESS WHEREOF, the undersigned entity has executed this Subscription Agreement to purchase Secured Notes in the amount shown below the Investor's signature below on the date set forth below.

Form of Entity:

☐ Trust ☐ Corporation ☐ Limited Liability Company ☐ Partnership

☐ Other: ____________________

Print Entity Name Identification No. ____________________

____________________
Telephone

____________________
Email Address

____________________
Residential Address

____________________
Date

The undersigned warrants that he/she has full power and authority to execute this Subscription Agreement on behalf of the above entity, and investment in the Secured Notes is not prohibited by the governing documents of the entity.

Name of Trust/Entity: ____________________

By ____________________
(Signature)

Signer's Printed Name: ____________________

Signer's Title: ____________________

Date: ____________________

**Subscription Amount** ____________________
***(minimum 50,000 and thereafter increments of 10,000)***

# Acceptance

The undersigned, as the Manager of Manhattan ST Notes, LLC (the "**Company**"), hereby accepts the Subscription of the Investor identified below on behalf of itself and on behalf of the Company as of the date written below, on the terms set forth in the Subscription Agreement on behalf of the Company either for (a) the Subscription Amount set forth below or (b) if the Subscription Amount below is left blank, the Investor's requested Maximum Subscription Amount of Secured Notes set forth in the space provided for on the Investor's signature page to the Subscription Agreement.

Capitalized terms used and not defined herein shall have the meanings set forth in the Subscription Agreement.

**Name of Investor:** David Simpson

**Subscription Amount:** USD 20,000.00

**MANAGER:**

Manhattan ST Notes, LLC

By: Signed by: Manhattan ST Notes Subscriptions
F3662395233842C...

Its: Manhattan ST Notes Subscriptions

ELITEGOLDUS20_SIMPSDHG5

Docusign Envelope ID: 047EE6E0-C48A-4834-A810-2A239B64CCA7



# Form of The Secured Note

**SECURED NOTE**

**THIS SECURITY HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR ANY STATE SECURITIES LAWS. NEITHER THIS SECURITY, NOR ANY INTEREST OR PARTICIPATION HEREIN OR THEREIN MAY BE REOFFERED, SOLD, ASSIGNED, TRANSFERRED, PLEDGED, ENCUMBERED OR OTHERWISE DISPOSED OF IN THE ABSENCE OF SUCH REGISTRATION OR UNLESS SUCH TRANSACTION IS EXEMPT FROM, OR NOT SUBJECT TO, REGISTRATION UNDER THE SECURITIES ACT.**

**MANHATTAN ST NOTES, LLC ELITE GOLD SERIES**

**FOR VALUE WHEN RECEIVED**, the undersigned, **MANHATTAN ST NOTES, LLC** a Delaware limited liability company having its registered address at 108 Patriot Drive, Suite A, Middletown, DE 19709 (the "**Company**") hereby promises to pay to or to the order of the Noteholder (referred to below) the Principal Coupon (referred to below) in the Principal Currency (referred to below) at the expiry of the Term(s) (referred to below) together with the Coupon(s) (referred to below) on each Coupon Redemption Payment Date (referred to below).

| | |
|---|---|
| **Noteholder** | David Simpson |
| **Noteholder Address** | [redacted] 19/F, Block 16<br>[redacted] Centre<br>51 [redacted]<br>[redacted]<br>Hong Kong<br>10000, Hong Kong |
| **Note Currency** | USD |
| **Principal Coupon Amount** | 20,000.00 |
| **Maturity Date** | 120 Calendar Days from the Note Issuance Date |
| **Extended Maturity Date** | 180 Calendar Days from the Note Issuance Date |
| **Enhancement Coupon** | Coupon equal to:<br>A x B<br>Where:<br>A = Principal Amount<br>B = 12.00% |
| **Accumulator Coupon**[1] | Coupon equal to:<br>A x B<br>Where:<br>A = Principal Amount<br>B = 8.00% |

*[1] Accumulator Coupons are only redeemable to those eligible Noteholders that elect the Extended Maturity Date via a Maturity Options Paper to be issued fourteen (14) Calendar days prior to the Maturity Date.*

Docusign Envelope ID: 047EE6E0-C48A-4834-A810-2A239B64CCA7

## Maturity Date – Coupon Redemption Payment Date(s)

| | |
|---|---|
| **Enhancement Coupon** | Seven (7) Calendar Days from the Maturity Date |
| **Principal Coupon** | Ten (10) Business Days from the Maturity Date |

*Noteholders should expect redemption proceeds to be credited to the Nominated Bank Account 2-4 business days from the Coupon Redemption Payment Date(s).*

*Where a Coupon Redemption Payment Date falls on a Saturday, Sunday, or a public holiday, such Coupon Redemption Payment Date shall be due on the next following business day.*

## Extended Maturity Date – Coupon Redemption Payment Date(s)

| | |
|---|---|
| **Enhancement Coupon** | Seven (7) Calendar Days from the Maturity Date |
| **Accumulator Coupon** | Seven (7) Calendar Days from the Extended Maturity Date |
| **Principal Coupon** | Ten (10) Business Days from the Extended Maturity Date |

*Noteholders should expect redemption proceeds to be credited to the Nominated Bank Account 2-4 business days from the Coupon Payment Redemption Date(s).*

*Where a Coupon Redemption Payment Date falls on a Saturday, Sunday, or a public holiday, such Coupon Redemption Payment Date shall be due on the next following business day.*

# Noteholder Nominated Bank Account

For receipt of cash coupon redemption payments for:
(i) Principal Coupon: and
(ii) Enhancement Coupon: and
(iii) Accumulator Coupon (for eligible Noteholders only)

| | |
|---|---|
| **Noteholder Bank Account:** | |
| **Bank:** | HSBC |
| **Bank address:** | Exchange Square |
| **Bank SWIFT:** | HSBCHKHHHKH |
| **IBAN/Account number:** | [redacted] |
| **Routing Number:** | |
| **Sort Code/Other:** | |
| **Account name:** | MR SIMPSON DAVID |
| **Account address:** | [redacted] 19/F, Block 16<br>[redacted] Centre<br>51 [redacted]<br>[redacted]<br>Hong Kong<br><br>10000, Hong Kong |

**SIGNED** for and on behalf of
**MANHATTAN ST NOTES, LLC**

Signed by:
Manhattan ST Notes Subscriptions
F3662395233842C...
Signature

*[End of Document]*

Docusign Envelope ID: 047EE6E0-C48A-4834-A810-2A239B64CCA7

MANHATTAN ST NOTES

# **Bank** Details

**USD**
Domestic & International Payments

| | |
|---|---|
| **Bank:** | BMO BANK N.A. |
| **Bank Routing Number:** (Domestic Wires) | [redacted] |
| **SWIFT Code:** (International Wires) | HATRUS44 |
| **Bank Address:** | 320 South Canal Street, Chicago, IL 60606 |
| **Beneficiary Account Name:** | MANHATTAN ST NOTES LLC |
| **Beneficiary Address:** | 614 N. Dupont Hwy, Suite 210, City of Dover, DE 19901 |
| **Beneficiary Account Number:** | 3322500 |
| **Payment Reference:** | ***Investor Name*** |

USD

**GBP**
Domestic & International Payments

| | |
|---|---|
| **Correspondent Bank:** | National Westminister Bank |
| **SWIFT Code:** | NWBKGB2L |
| **Beneficiary Bank:** | BMO BANK N.A. |
| **SWIFT Code:** | HATRUS44GTM |
| **Bank Address:** | 320 South Canal Street, Chicago, IL 60606 |
| **Beneficiary Account Name:** | MANHATTAN ST NOTES LLC |
| **Beneficiary Address:** | 614 N. Dupont Hwy, Suite 210, City of Dover, DE 19901 |
| **Beneficiary Account Number:** | 777553322500 |
| **Payment Reference:** | ***Investor Name*** <br> ***DO NOT CONVERT*** |

GBP

**EUR**
Domestic & International Payments

| | |
|---|---|
| **Bank:** | DBS Bank (Hong Kong) Limited |
| **SWIFT Code:** | DHBKHKHH |
| **Bank Address:** | 18th Floor, The Center, 99 Queen's Road Central, Central, Hong Kong SAR |
| **Beneficiary Account Name:** | MANHATTAN ST NOTES LLC |
| **Beneficiary Address:** | 614 N. Dupont Hwy, Suite 210, City of Dover, DE 19901 |
| **Beneficiary Account Number:** | 7950129578 |
| **Payment Reference:** | ***Investor Name*** |

EUR

MANHATTAN ST NOTES

## SGD Domestic Payments
(if sending from a HK Bank)

| | |
|---|---|
| **Bank:** | DBS Bank (Hong Kong) Limited |
| **Bank Code:** | 016 |
| **Branch Code:** | 478 |
| **Bank Address:** | 18th Floor, The Center, 99 Queen's Road Central, Central, Hong Kong SAR |
| **Beneficiary Account Name:** | Manhattan ST Notes, LLC |
| **Beneficiary Account Number:** | 7950129578 |
| **Payment Reference:** | ***Investor Name*** |

## SGD International Payments
(if sending from a Bank outside of HK)

| | |
|---|---|
| **Bank:** | DBS Bank (Hong Kong) Limited |
| **SWIFT Code:** | DHBKHKHH |
| **Bank Address:** | 18th Floor, The Center, 99 Queen's Road Central, Central, Hong Kong SAR |
| **Beneficiary Account Name:** | Manhattan ST Notes, LLC |
| **Beneficiary Account Number:** | 7950129578 |
| **Payment Reference:** | ***Investor Name*** |

SGD

## CAD Domestic & International Payments

| | |
|---|---|
| **Correspondent Bank:** | Bank of Montreal, Toronto |
| **SWIFT Code:** | BOFMCAT2 |
| **Bank:** | BMO BANK N.A. |
| **SWIFT Code:** | HATRUS44 |
| **Bank Address:** | 320 South Canal Street, Chicago, IL 60606 |
| **Beneficiary Account Name:** | MANHATTAN ST NOTES LLC |
| **Beneficiary Address:** | 614 N. Dupont Hwy, Suite 210, City of Dover, DE 19901 |
| **Beneficiary Account Number:** | [redacted] |
| **Payment Reference:** | ***Investor Name*** |

CAD

MANHATTAN ST NOTES

**AED** International Payments

| | |
|---|---|
| **Bank:** | BMO BANK N.A. |
| **SWIFT Code:** | HATRUS44 |
| **Bank Address:** | 320 South Canal Street, Chicago, IL 60606 |
| **Beneficiary Account Name:** | MANHATTAN ST NOTES LLC |
| **Beneficiary Address:** | 614 N. Dupont Hwy, Suite 210, City of Dover, DE 19901 |
| **Beneficiary Account Number:** | 3322500 |
| **Payment Reference:** | ***Investor Name*** |

**AUD** Domestic Payments

(If sending from an Australian Bank)

| | |
|---|---|
| **Bank:** | Australia and New Zealand Banking Group Limited |
| **BSB Code:** | 013943 |
| **Bank Address:** | 833 Collins Street, Melbourne, Australia |
| **Beneficiary Account Name:** | MANHATTAN ST NOTES LLC |
| **Beneficiary Address:** | 614 N. Dupont Hwy, Suite 210, City of Dover, DE 19901 |
| **Beneficiary Account Number:** | 612596102 |
| **Payment Reference:** | ***Investor Name*** |

**AUD** International Payments

(If sending from a Bank outside of Australia)

| | |
|---|---|
| **Bank:** | DBS Bank Ltd |
| **SWIFT Code:** | DBSSSGSG |
| **Bank Address:** | 12 Marina Boulevard, DBS Asia Central, Marina Bay Financial Centre Tower 3, Singapore 018982 |
| **Beneficiary Account Name:** | MANHATTAN ST NOTES LLC |
| **Beneficiary Address:** | 614 N. Dupont Hwy, Suite 210, City of Dover, DE 19901 |
| **Beneficiary Account Number:** | 8853876385 |
| **Payment Reference:** | ***Investor Name*** |

The Note applicant should instruct the remitting bank to send a SWIFT advice (format MT103) to their nominated agent advising details of remittance, including the full name of the Holder and stating that such advice relates to an investment in the Manhattan ST Notes with a reference in the Message to Beneficiary: Surname of applicant for ease of identification.

docusign

## Certificate Of Completion

| | | |
|---|---|---|
| Envelope Id: 047EE6E0-C48A-4834-A810-2A239B64CCA7 | | Status: Completed |
| Subject: ELITE Gold Series 120 Day Short-Term Notes - Subscription Agreement | | |
| Source Envelope: | | |
| Document Pages: 21 | Signatures: 3 | Envelope Originator: |
| Certificate Pages: 2 | Initials: 0 | Manhattan ST Notes LLC |
| AutoNav: Enabled | | investments@manhattan5op.com |
| EnvelopeId Stamping: Enabled | | IP Address: 52.163.187.236 |
| Time Zone: (UTC-05:00) Eastern Time (US & Canada) | | |

## Record Tracking

| | | |
|---|---|---|
| Status: Original<br>May 20, 2025 \| 03:56 | Holder: Manhattan ST Notes LLC<br>investments@manhattan5op.com | Location: DocuSign |

| Signer Events | Signature | Timestamp |
|---|---|---|
| David Simpson<br>[redacted]<br>Security Level: Email, Account Authentication (None) | Signed by:<br>David Simpson<br>3795FDAF26CF49F...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 65.181.93.146 | Sent: May 20, 2025 \| 03:56<br>Viewed: May 20, 2025 \| 04:10<br>Signed: May 20, 2025 \| 04:22 |
| **Electronic Record and Signature Disclosure:**<br>Not Offered via Docusign | | |
| Manhattan ST Notes Subscriptions<br>investments@manhattan5op.com<br>COO<br>Manhattan 5 Oceans Partners<br>Security Level: Email, Account Authentication (None) | Signed by:<br>Manhattan ST Notes Subscriptions<br>F3662395233842C...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 149.40.49.7 | Sent: May 20, 2025 \| 04:22<br>Viewed: May 20, 2025 \| 04:24<br>Signed: May 20, 2025 \| 04:24 |
| **Electronic Record and Signature Disclosure:**<br>Not Offered via Docusign | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | May 20, 2025 \| 03:56 |
| Certified Delivered | Security Checked | May 20, 2025 \| 04:24 |
| Signing Complete | Security Checked | May 20, 2025 \| 04:24 |
| Completed | Security Checked | May 20, 2025 \| 04:24 |

| Payment Events | Status | Timestamps |
| --- | --- | --- |